Lisa B. FELDMAN, Appellant

v.

Walter I. HOFFMAN, M.D.

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 2014.

Decided Dec. 19, 2014.

Wayne A. Ely, Penndel, for appellant.

Sharon R. Weisbein, Norristown, for appellee.

BEFORE: DAN PELLEGRINI, President Judge, and BERNARD L. McGINLEY, Judge (P.), and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge McGINLEY.

Lisa Feldman (Feldman) appeals from the Order of the Court of Common Pleas of Montgomery County (trial court) which dismissed her Complaint, with prejudice, against Walter Hoffman, M.D., (Dr. Hoffman), the Coroner of Montgomery County.[1]

Feldman's son, age 27, Evan Klausen (Decedent), took his life on September 9, 2011. Decedent left a last letter on his dining room table (Suicide Letter). Dr. Hoffman took possession of Decedent's body following his death and also took possession of the original Suicide Letter which he used for his investigation. On September 14, 2011, Dr. Hoffman ruled Decedent's death a suicide. Dr. Hoffman returned Decedent's personal property, including his wallet and cell phone, to Feldman but he did not return the original Suicide Letter.

Feldman asked Dr. Hoffman to return the original Suicide Letter. Dr. Hoffman stated that it was not his policy to release documents of this kind. He advised Feldman that if she wanted the Suicide Letter she would have to file a petition in Orphans' Court and obtain a decree ordering him to hand it over.

Feldman engaged counsel and filed the petition. The Orphans' Court ordered Dr. Hoffman to Show Cause why he should not be required to turn the original Suicide Letter over to Feldman. After he received the Rule to Show Cause, Dr. Hoffman contacted Feldman's attorneys and told them that she would have to ·come personally to pick it up and prove her identity. When Feldman arrived at Dr. Hoffman's Office, she was given the original Suicide Letter. Dr. Hoffman never responded to the Rule to Show Cause.

### Feldman's Complaint

On February 14, 2013, Feldman filed a two-count complaint against Dr. Hoffman for (1) conversion; and (2) intentional infliction of emotional distress.

Feldman alleged that Decedent "left a [Suicide Letter] addressed to Plaintiff [Feldman]." Complaint, Paragraph 11 at 2; Reproduced Record (R.R.) at 9a. She alleged that Dr. Hoffman refused to deliver the original Suicide Letter to her "knowing that the [Suicide Letter] was not his property and despite the fact that there was no reason to maintain possession of it." Complaint at Paragraph 2; R.R. at 8a. Plaintiff averred that Dr. Hoffman had no legal or factual justification for his intentional and deliberate refusal to release the Suicide Letter. Complaint at Paragraph 23; R.R. at 10a. She alleged that Dr. Hoffman had no basis to retain the original Suicide Letter because no "investigation" was necessary after Dr. Hoffman issued the Death Certificate, within days of Decedent's death, and without completing an autopsy. Complaint at Paragraph 35; R.R. at 12a. Feldman alleged that the provisions of the Second Class County Code commonly referred to as the "Coroner's Act[2]" required Dr. Hoffman to turn the original Suicide Letter over to her upon request and that Dr.

---

1. Montgomery County is a Second Class A County which is governed by the Second Class County Code. Act of July 28, 1953, P.L. 723, *as amended,* 16 P.S. §§ 3101–6302.

2. 16 P.S. §§ 4231–4262.

Hoffman had "no basis for refusing to do so." Complaint at Paragraph 38; R.R. at 12a.

Feldman asserted that Hoffman's actions "were intentional, outrageous or wanton behavior calculated to bring about [Feldman's] emotional distress." Complaint at Paragraph 41; R.R. at 13a.

She also asserted that Dr. Hoffman committed the tort of conversion by "wrongfully taking possession of the property of [Feldman] and refusing to return it." Complaint at Paragraph 44; R.R. at 13a.

The Complaint contained an *ad damnum* clause for damages and a request for punitive damages.

### Hoffman's Preliminary Objections

On March 5, 2013, Dr. Hoffman filed preliminary objections. He argued that Feldman's Complaint should be dismissed because: (1) he is entitled to "absolute immunity" as a "high-ranking public official;" and (2) Feldman failed to plead the necessary elements of conversion and intentional infliction of emotional distress.[3]

With respect to immunity, Dr. Hoffman asserted that he is a "high-ranking public official." He argued that as a "high-ranking public official" he enjoys absolute immunity even when willful misconduct is alleged. He argued that the doctrine of high public official immunity extends to intentional torts, including intentional infliction of emotional distress.

Dr. Hoffman asserted the Complaint alleged no facts that he acted outside the scope of his duties as the Montgomery County Coroner, and all of the allegedly actionable behavior was made in the course and scope of his duties. He contended that he had a statutory duty under the Coroner's Act to investigate the facts and circumstances of Decedent's death and the original Suicide Letter was an obvious part of his investigation. The Coroner's Act provides that after an investigation is completed, the coroner must hold all personal effects and property of the deceased for one year, unless claimed by an established legal representative of the deceased. The Complaint contained no allegation that Feldman had established that she was Decedent's legal representative. Dr. Hoffman asserted that, taking the facts in the Complaint as true, Feldman pled facts which established that he was acting within the scope of his employment as the Montgomery County Coroner and, therefore, he is entitled to absolute immunity.

In support of his demurrer, Dr. Hoffman argued that Feldman failed to state a claim for intentional infliction of emotional distress.[4] He contended that at most, the Complaint averred a general dissatisfaction with the way he carried out his discretionary duties as the Montgomery County Coroner and that she was not given the Suicide Letter within a time-frame *she* deemed appropriate. Dr. Hoffman argued the allegations of the Complaint did not state facts which made a showing of the extreme and outrageous conduct necessary to state a claim for intentional infliction of emotional distress.

Dr. Hoffman further argued that Feld-

---

3. Pa.R.Civ.P. No. 1028(a)(4) authorizes parties to file preliminary objections based on legal insufficiency of a pleading (i.e., a demurrer).

4. The *prima facie* case for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) which is intentional or reckless; (3) which causes emotional distress; and (4) which distress is "severe." *Hoy v. Angelone*, 456 Pa.Super. 596, 691 A.2d 476, 482 (1997).

man failed to state a claim for conversion.[5] First, he contended that she inaccurately stated in the Complaint that the Suicide Letter was "her property" when, in fact, it was not. Dr. Hoffman attached a copy of the Suicide Letter as "Exhibit B" and noted that it "was not addressed to [Feldman]," but was addressed: "To everyone in my life" and that "the first person who was listed was 'Cari.'" Hoffman's Preliminary Objections, Paragraph 35 at 6; R.R. at 22a. Dr. Hoffman also asserted that the Complaint failed to establish that he "wrongfully" took possession of or refused to return the Suicide Letter.

### Feldman's Preliminary Objections to Hoffman's Preliminary Objections

Feldman filed preliminary objections to the preliminary objections of Dr. Hoffman. Feldman alleged that Dr. Hoffman's preliminary objections improperly raised the affirmative defense of immunity. She argued that immunity is an affirmative defense that must be raised in New Matter, not in preliminary objections. Pa.R.C.P. No. 1030(a).

She also contended that Dr. Hoffman erroneously relied on matters outside the Complaint, namely the Suicide Letter, which was not attached to the Complaint, which was in violation of Pa.R.C.P. No. 1028(a)(4).

Feldman asserted that Dr. Hoffman's preliminary objections improperly attempted to summarily resolve two key issues that require a full factual record to properly determine: (1) Dr. Hoffman's status as high public official; and (2) Feldman's possessory right to the Suicide Letter. Feldman requested that Dr. Hoffman's preliminary objections be stricken and that he be ordered to answer the Complaint.

### Trial Court's Order

On September 18, 2013, the trial court sustained Dr. Hoffman's preliminary objections and dismissed Feldman's Complaint with prejudice. The trial court concluded that it was apparent from the face of the Complaint that high official immunity applied. The trial court further found that, in any event, Feldman's Complaint was insufficient to withstand a demurrer. On the issue of conversion, Feldman admitted that she received the original Suicide Letter after three months, which was timely and lawful and in the course and scope of Dr. Hoffman's duties.[6] The trial court further found that the Letter "was not addressed solely to [Feldman] but to a number of people, and [Feldman] did not clearly establish that [Decedent's] original note was her property so as to deprive her of the right to its use." Trial Court Opinion, December 26, 2013, at 4. Finally, the trial court found no conduct in the Complaint that supported Feldman's claim for

5. To sufficiently plead a cause of action for conversion, a plaintiff must allege facts to support that a defendant intentionally acted to deprive plaintiff of her right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification. *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 197 A.2d 721, 726 (1964).

6. Section 4235(a) of the Coroner's Act, 16 P.S. § 4235(a), provides that the coroner "shall safely keep in his charge all personal effects and property which appear to have been on or about the person at the time of his death, or being found on any decedent whose body is received at the county morgue or at any other morgue in lieu thereof, and all such effects and property which are delivered to him according to law. The coroner shall hold such property for one year, unless sooner claimed by legal representatives of the deceased, or otherwise duly and lawfully claimed or disposed of."

intentional infliction of emotional distress or any reckless conduct as to give rise to a claim for punitive damages.

## I.

■ On appeal[7], Feldman first argues that the trial court erred because it was not clear from the face of her Complaint that Dr. Hoffman was entitled to absolute high public official immunity. She argues that "no case found by appellant [Feldman] has determined whether a coroner such as Defendant [Dr. Hoffman] is ... entitled to 'high official' immunity, and a full record should have been developed before this issue is ruled upon so that the matter can properly be reviewed by this [the Commonwealth] Court." Feldman's Brief at 15.

### High Official Immunity

■ The common law doctrine of "high official immunity" insulates "high-ranking public officials" from all statements made and acts taken in the course of their official duties. *Matson v. Margiotti*, 371 Pa. 188, 88 A.2d 892, 895 (1952); *Holt v. Northwest Pennsylvania Training Part-*

*nership Consortium, Inc.*, 694 A.2d 1134 (Pa.Cmwlth.1997).[8]

The public interest does not demand that *all* public officials be entitled to absolute privilege, but only that "high-ranking officers" be so protected. *Montgomery v. City of Philadelphia*, 392 Pa. 178, 140 A.2d 100, 104 (1958).

In *Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194 (1996), our Supreme Court explained absolute high official immunity, stating:

> [T]he doctrine of absolute privilege for high public officials, as its name implies, is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.
>
> ....
>
> [It is] designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before

7. In determining whether preliminary objections in the nature of a demurrer were properly sustained, the standard of review is de novo and the scope of review is plenary. *Luke v. Cataldi*, 593 Pa. 461, 932 A.2d 45 (2007). A court may sustain preliminary objections only when, based on the facts pleaded, it is clear and free from doubt that the plaintiff will be unable to prove facts legally sufficient to establish a right to relief. *Hospital & Healthsystem Association of Pennsylvania v. Department of Public Welfare*, 585 Pa. 106, 888 A.2d 601 (2005). For the purpose of evaluating the legal sufficiency of a challenged pleading, the court must accept as true all well-pleaded material and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts. *Willet v. Pennsylvania Medical Catastrophe Loss Fund*, 549 Pa. 613, 702 A.2d 850 (1997).

Whether a particular immunity applies is a question of law as to which our standard of review is de novo and our scope of review is plenary. *See Christy v. Cranberry Volunteer Ambulance Corps, Inc.*, 579 Pa. 404, 856 A.2d 43, 46 (2004); *Hoffa v. Bimes*, 954 A.2d 1241, 1244 (Pa.Super.2008), *appeal denied*, 600 Pa. 763, 967 A.2d 960 (2009).

8. The doctrine of high public official immunity should not be confused with the immunities under 42 Pa.C.S. §§ 8545, 8546, which concern the limitations on and defenses to liability of an individual employee of a local agency for "official liability" and "official immunity." Here, Hoffman raised the defense of "high ranking public official immunity," therefore, these sections are inapplicable. *See Holt; Kuzel v. Krause*, 658 A.2d 856 (Pa.Cmwlth. 1995).

the jury. And yet, beyond this lies a deeper purpose, the protection of society's interest in the unfettered discussion of public business and in full public knowledge of the facts and conduct of such business.

*Lindner,* 677 A.2d at 1195 (citations omitted) (emphasis added).

As our Supreme Court observed, the public interest is best served by granting broad immunity to high-ranking officers, thereby promoting "unfettered discharge of public business and full public knowledge of the facts and conduct of such business. [High public official] immunity is thus a means of removing any inhibition which might deprive the public of the best service of its officers and agencies." *Montgomery,* 140 A.2d at 103–104.

The determination of whether a particular individual qualifies as a "high-ranking public official" must be determined on a case-by-case basis. *Lindner,* 677 A.2d at 1198. There is no line of demarcation which separates offices which are protected by absolute immunity from those which are not. *Montgomery,* 140 A.2d at 105. Factors which the court may consider include: the nature of the public officer's duties, the importance of his office and whether or not he has policy-making functions. *Montgomery,* 140 A.2d at 105. In *Durham v. McElynn,* 565 Pa. 163, 772 A.2d 68 (2001), our Supreme Court (holding that the privilege extended to an assistant district attorney) clarified that having a policy-making function is not the sole or overriding factor in determining the scope of absolute immunity. Rather, it is the "the public interest in seeing that the official not be impeded in the performance of important duties." *Id.* at 70.

Absolute immunity has been extended to township supervisors, deputy commissioner of public property and city architect, state Attorney General, mayor, borough council president, county attorney, city revenue commissioner, city comptroller, district attorney, and Superintendent of the Parole Division of the Board of Probation and Parole. *See Lindner,* 677 A.2d at 1198–99 (listing cases). It has also been extended to a state police captain in charge of a local troop, *Schroeck v. Pennsylvania State Police,* 26 Pa.Cmwlth. 41, 362 A.2d 486 (1976); the executive directors of intermediate school unit, *Azar v. Ferrari,* 898 A.2d 55 (Pa.Cmwlth.2006); and borough council members. *Hall v. Kiger,* 795 A.2d 497 (Pa.Cmwlth.), *appeal denied,* 572 Pa. 713, 813 A.2d 846 (2002).

This Court also notes that other courts have applied absolute immunity to state and county medical officers and coroners. *Lawyer v. Kernodle,* 721 F.2d 632, 636 (8th Cir.1983); *Mills v. Small,* 446 F.2d 249 (9th Cir.1971), *certiorari denied,* 404 U.S. 991, 92 S.Ct. 535, 30 L.Ed.2d 543 (1971) (medical examiner was acting in a quasi-judicial capacity when he allegedly falsely certified to superior court that he had examined plaintiff and, therefore, he was immune from liability under civil rights act); *Burkes v. Callion,* 433 F.2d 318 (9th Cir.1970); *Willett v. Wells,* 469 F.Supp. 748, 752–53 (E.D.Tenn.1977) (defendant medical examiner and defendant coroner immune from liability where allegations of complaint related to conduct occurring within the scope of their official positions); *Hebert v. Morley,* 273 F.Supp. 800, 803 (C.D.Cal.1967) (defendant coroner's immunity found "compelling" where allegations concerned acts taken in the scope of his official duties); *See also: Thomas v. Churton,* 2 B. & S. 475, 477, 121 Eng. Rep. 1150, 1151 (Q.B. 1862) (judicial immunity attached to the office and relieved the coroner of liability for money damages in an action for slander allegedly committed during the performance of his official duties).

### Is the Montgomery County Coroner a High–Ranking Official?

In Section 401(4) of the Second Class County Code, 16 P.S. § 3401(4), "coroner" is listed as an elected officer of the County.

"The office of coroner is one of great dignity and is equal in antiquity with that of the sheriff." *Marvin v. Monroe County*, 154 Pa.Super. 75, 35 A.2d 781, 782 (1943). "Since its inception in 1276, the office of coroner has been investigative in nature, as well as judicial; it is an office designed to protect the public welfare, and, for this purpose, includes the powers of a committing magistrate." *Commonwealth of Pennsylvania v. John Sullivan*, 446 Pa. 419, 286 A.2d 898, 902 (1971).

The coroner is responsible for investigating the facts and circumstances concerning sudden, violent and unnatural deaths which happen in the County, with a view of determining whether they were caused by criminal actions of others and to apprehend and bring the responsible persons to trial. *Marvin*.

Incident to the coroner's duties is the power to appoint deputies to act on his behalf, Section 1231 of the Second Class County Code, 16 P.S. § 4231; to make general rules and regulations for the government and control of county morgues, Section 1232 of the Second Class County Code, 16 P.S. § 4232; and to order an autopsy when appropriate and essential to ascertain the circumstances and the nature of death, Section 1236 of the Second Class County Code, 16 P.S. § 4236.

He has discretion to determine whether a death is "suspicious" and to conduct an inquest into the manner of death. Section 1238 of the Second Class County Code, 16 P.S. § 4238. He is charged with consulting and advising the district attorney. Section 1241 of the Second Class County Code, 16 P.S. § 4241. He has the authority, to the same extent as any court of common pleas of the Commonwealth, to issue subpoenas to obtain the attendance of any person he deems necessary to examine as a witness at an inquest, Section 1243 of the Second Class County Code, 16 P.S. § 4243, to summon a jury to determine the manner and criminality of death, Section 1243 of the Second Class County Code, 16 P.S. § 4243.1; and to administer oaths and affirmations to all persons appearing before him, Section 1244 of the Second Class County Code, 16 P.S. § 4244. He has the power and discretion to admit or bar the public from any inquest. Section 1246 of the Second Class County Code, 16 P.S. § 4246.

The coroner's office and public functions are clearly designed to protect the public welfare. He possesses significant discretion and autonomy. He has independent power to make administration and policy decisions with respect to his office and county morgues. He is statutorily required to make rules and regulations for the government and control of the county morgue(s).

This Court believes that the coroner's office is sufficiently important that it would be in the public's interest that he not be impeded in the performance of his important duties by allowing the public to dictate to him when and which investigatory documents he must relinquish. Based upon review of relevant case law and statutes, this Court has no difficulty in concluding that the Montgomery County Coroner is a high-ranking official.

Next, we must consider whether it was averred that Dr. Hoffman's allegedly actionable behavior was made in the course of his official duties.

In her Complaint, Feldman alleged that Dr. Hoffman's decision not to turn over

the original Suicide Letter was done in the course and scope of his official duties as coroner. Feldman essentially challenges Dr. Hoffman's decision to retain the document for as long as he did. Her allegations against Dr. Hoffman are directly related to decisions he made while acting in his official capacity as a high public official. Feldman alleged that Dr. Hoffman indicated that he was retaining the Suicide Letter because it was not his policy to turn over such documents. There is no question that the Suicide Letter was an important part of Dr. Hoffman's investigation into the manner of Decedent's death. The evidentiary significance that an original suicide note can provide is beyond cavil. The original is required to verify its authenticity, handwriting, and fingerprints in both criminal and civil trials. *See State v. Guthrie,* 627 N.W.2d 401 (S.D.2001). As Coroner, Dr. Hoffman had discretion to decide which documents were important to his investigation, which documents he was required to retain and/or turn over to the prosecuting attorney, and when it was appropriate to release them, especially here where the document at issue constituted key evidence which supported his conclusion that the manner of death was suicide.

Because Dr. Hoffman qualifies as a high-ranking public official and it was alleged that he was acting within the scope of his duties, he qualifies for high official immunity.

## II.

In the second part of Feldman's first argument, Feldman asserts that the trial court erred when it sustained Dr. Hoffman's preliminary objections because he improperly raised the affirmative defense of immunity by preliminary objection. Feldman contends that immunity from suit is an affirmative defense that, under the Pennsylvania Rules of Civil Procedure, must be pled in a responsive pleading under the heading New Matter, not as a preliminary objection. In pertinent part, Pa.R.C.P. No. 1030 provides:

(a) Except as provided by subdivision (b), all affirmative defenses including but not limited to the defenses of ... immunity from suit ... shall be pleaded in a responsive pleading under the heading "New Matter". A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading.

Feldman acknowledges that Pennsylvania courts have long recognized a limited exception to this rule and have allowed parties to plead the affirmative defense of immunity as a preliminary objection where the defense is clearly applicable on the face of the complaint. *Greenberg v. Aetna Ins. Co.,* 427 Pa. 511, 235 A.2d 576 (1967); *Logan v. Lillie,* 728 A.2d 995 (Pa.Cmwlth. 1999); *Tiedeman v. Philadelphia,* 732 A.2d 696 (Pa.Cmwlth.1999); *Chester Upland School District v. Yesavage,* 653 A.2d 1319 (Pa.Cmwlth.1994); *State Workmen's Ins. Fund, Com., Dep't of Labor and Industry v. Caparo Real Estate Inc.,* 160 Pa. Cmwlth. 581, 635 A.2d 705 (1993); *Wurth by Wurth v. City of Philadelphia,* 136 Pa. Cmwlth. 629, 584 A.2d 403 (1990).

Feldman contends, however, that this limited exception is *only* available where the opposing party does not object to the defective preliminary objections. She claims that because she filed preliminary objections to Hoffman's preliminary objections, the exception does not apply.[9] She

---

9. Specifically, her preliminary objections to Hoffman's preliminary objections stated: "Defendant's [Hoffman's] preliminary objec-

tions improperly raise the affirmative defense of immunity from suit." Plaintiff's Prelimi-

cites the Supreme Court's decision in *Rufo v. Bastian–Blessing Co.,* 417 Pa. 107, 207 A.2d 823 (1965), as support for her assertion that a trial court may only consider an immunity defense raised by preliminary objection *if* the plaintiff does not object.

This Court does not agree that *Rufo* stands for the proposition that a trial court may not consider a preliminary objection raising the defense of immunity *if* the opposing party objects to the procedure.

In *Rufo,* Clementino Rufo (Rufo) purchased from Bastian–Blessing Company (Bastian) a refilled, portable cylinder of liquefied gas for a torch in connection with his work. The purchase was made in March of 1956. On December 8, 1957, gas escaped from the cylinder's valve and caught on fire causing personal and property damage to Rufo. On July 12, 1960, Rufo filed a Complaint against Bastian for breach of implied warranties of fitness for intended purpose and merchantable quality. *Rufo,* 207 A.2d at 823. Bastian filed preliminary objections in the nature of a demurrer asserting, among other things, the applicable four year statute of limitations barred the suit. Rufo filed an answer to Bastian's preliminary objections and averred that the complaint was filed within the statute of limitations.

The trial court dismissed the complaint because, on its face, it was clear that Rufo's action was barred by the statute of limitations, which began to accrue four years from the date Rufo took delivery of the cylinder.

On appeal, Rufo argued, for the first time, that the statute of limitations was an affirmative defense to be pleaded under new matter rather than by preliminary objection, and that he should have been given an opportunity to overcome the pleading of such a defense. *Rufo,* 207 A.2d at 826. The Supreme Court found that Rufo waived his right to object *on appeal* to the procedural defect because he "did not raise any objection in the court below of whether defendant's [Bastian] pleading might be defective." *Rufo,* 207 A.2d at 826. The Supreme Court found "even more important" was that Rufo "answered and denied" the preliminary objection and "[i]n effect, [Rufo] treated defendant's [Bastian] objection as new matter and answered it. In so doing, [Rufo] did not raise any issues of fact that might have to be tried. [Rufo] simply asserted that the original action was timely." *Id.* The Supreme Court "fail[ed] to see what more [Rufo] could have derived from a more strict course of pleading." *Id.* The Court found that there was "no prejudice involved in [the] affirmance of the sustaining of a preliminary objection based upon the statute of limitations." *Id.*

Thus, under *Rufo,* where the opposing party does not object to raising the immunity defense *via* preliminary objection on substantive grounds, (for example, it does not argue that further pleading is necessary to develop facts) and the trial court proceeds to rule that the defense is apparent from the face of the Complaint, then the opposing party waives its right, under the general laws of waiver, to dispute that on appeal.

Between the time when *Rufo* was decided and now, several conflicting lines of cases have evolved on the issue of whether an affirmative defense may be raised by preliminary objection.[10] In Feldman's de-

---

nary Objections to the Preliminary Objections of Defendant, ¶ 15.

**10.** To say the law in this area is inconsistent would be an understatement. Nearly a dec-

ade and a half ago, this Court, *en banc,* recognized a divergent line of cases in *Wurth by Wurth v. City of Philadelphia,* 136 Pa.Cmwlth. 629, 584 A.2d 403, 404–405 (1990):

fense, there are cases which support her position. One line of cases suggests that the trial court's authority to consider the affirmative defense of immunity on preliminary objections depends on whether the plaintiff objects to the erroneous procedure. Many cases have held, where a party does not raise a procedural objection to the immunity defense having. been raised by preliminary objection, the trial court may consider the applicability of the defense [11]; the implication of those cases being that if the opposing party *does* object, the opposite holds true, i.e., the trial

Preliminarily, this Court is required once again to address the propriety of raising affirmative defenses by means of preliminary objections instead of new matter. Pa. R.C.P. No. 1030 provides that "[a]ll affirmative defenses including but not limited to ... immunity from suit ... shall be pleaded in a responsive pleading under the heading 'New Matter'...." Notwithstanding the mandatory language of Rule 1030, litigants in this Commonwealth have time and again raised affirmative defenses, including immunity, by way of preliminary objections; and the courts of this Commonwealth have time and again entertained the merits of these pleadings, sometimes while expressly approving the procedure and sometimes while admonishing offending litigants for violating the Rules of Civil Procedure. In this Court, three major lines of cases have developed which permit, under certain circumstances, a court's review of the affirmative defense of governmental immunity when raised by preliminary objections. The first allows immunity to be raised by preliminary objections where the immunity is clear on the face of the pleadings, notwithstanding Rule 1030. See, e.g., *Dorsch v. Butler Area School District*, 105 Pa. Cmwlth. 519, 525 A.2d 17 (1987); *Harris v. Rundle*, 27 Pa.Cmwlth. 445, 366 A.2d 970 (1976). The second permits a court to review the merits of an immunity defense (and no doubt other affirmative defenses) raised by preliminary objections where the opposing party fails to object to the procedural defect, thereby waiving Rule 1030. See, e.g., *Hawkins v. City of Harrisburg*, 120 Pa.Cmwlth. 369, 548 A.2d 399 (1988); *County of Allegheny v. Dominijanni*, 109 Pa.Cmwlth. 484, 531 A.2d 562 (1987). The third combines both approaches, stating that if the defense of immunity is apparent on the face of the challenged pleading, the immunity defense will be considered on preliminary objection unless the opposing party challenges this procedure by filing preliminary objections to the preliminary objections. See, e.g., *Malia v. Monchak*, 116 Pa.Cmwlth. 484, 543 A.2d 184 (1988); *Ziccardi v. School District of Philadelphia*, 91 Pa.Cmwlth. 595, 498 A.2d 452 (1985); *Swartz v. Masloff*, 62 Pa.Cmwlth. 522, 437 A.2d 472 (1981).

**11.** *See Freach v. Com.*, 471 Pa. 558, 370 A.2d 1163 (1977) ("because the plaintiffs-appellants did not object at any point in the proceedings before the Commonwealth Court to the manner in which the issue of immunity was raised and the Commonwealth Court decided the immunity questions on their merits, we will do likewise."); *Beaver v. Coatesville Area School Dist.*, 845 A.2d 955, 960 (Pa. Cmwlth.2004) ("we have not allowed the immunity defense to be considered by way of preliminary objection where the opposing party has objected."); *Mayo v. Lichtenwalner*, 125 Pa.Cmwlth. 137, 557 A.2d 798 (1989) (if the defense of immunity is apparent on the face of the challenged pleading, the immunity defense will be considered on preliminary objection "unless the opposing party challenges this procedure by filing preliminary objections to the preliminary objections."); *Malia v. Monchak*, 116 Pa.Cmwlth. 484, 543 A.2d 184, 187 (1988) (same); *E-Z Parks, Inc. v. Larson*, 91 Pa.Cmwlth. 600, 498 A.2d 1364 (1985) (trial court may address the affirmative defense of immunity raised as a preliminary objection if the defense is apparent on the face of the pleading or where the plaintiff has not objected); *Brey v. Com., Liquor Control Bd.*, 33 Pa.Cmwlth. 213, 381 A.2d 228 (1978) ("[t]he plaintiffs have not objected to this procedural defect and we will, for reasons of judicial economy, address the issues on the merits"); *Sharp v. Com.*, 29 Pa.Cmwlth. 607, 372 A.2d 59 (1977); *Walter v. Com.*, 30 Pa. Cmwlth. 248, 373 A.2d 771 (1977) ("since plaintiffs did not object to the manner in which the issue of immunity was raised, we will, in the interest of judicial economy, decide the issue on its merits"); *Milk Marketing Board v. Sunnybrook Dairies, Inc.*, 32 Pa. Cmwlth. 313, 379 A.2d 330 (1977).

court may *not* consider the defense on preliminary objection.

However, in the cases where, as here, the plaintiff *did object*, the courts, with very few exceptions, have declined to adhere to such a rigid rule, especially where no purpose would be served by a delay in ruling on the matter and it would expedite disposition of the case.[12] Instead, in cases where the opposing party did object to immunity as a preliminary objection, the majority of courts have resisted the application of form over substance, holding that the defense of immunity may be raised by preliminary objections *even when the opposing party objected to the procedure.* The courts have tended to engage in some type of analysis beyond noting the technical procedural error.

One of the earliest cases where this Court addressed a situation where the plaintiff objected to the manner in which the defense of immunity was raised is *McCreary v. City of Philadelphia*, 95 Pa. Cmwlth. 285, 505 A.2d 385 (1986). There, Joan McCreary (McCreary) filed a complaint against the City of Philadelphia and alleged that she was injured as a result of tortious conduct of the City's police department. The City filed preliminary objections and raised the defense of governmental immunity. McCreary filed preliminary objections in which she argued that Pa.R.C.P. No. 1030 required that the affirmative defense of government immunity be raised by way of new matter, rather than by preliminary objections. The Court of Common Pleas of Philadelphia County granted the City's preliminary objections.

On appeal, McCreary argued, for the first time, that a local ordinance precluded the City from raising government immunity as a defense in any civil action commenced by a person sustaining bodily injury caused by the alleged negligence or unlawful conduct of any policy officer in the course of his employment. *McCreary*, 505 A.2d at 386.

The City argued that the Court of Common Pleas of Philadelphia County must be affirmed because McCreary waived the argument that the ordinance applied because she did not raise it before. This Court disagreed with the City and found that because McCreary objected to the City raising immunity in preliminary objections, the Court of Common Pleas of Philadelphia County should have stricken the City's preliminary objections. This Court reasoned that McCreary could have, had she been given the opportunity, raised the local ordinance in question in a responsive pleading if immunity had properly been raised in new matter:

> Both this court and the Supreme Court, however, have stated that a party may object to an opponent's raising immunity from suit in an improper manner, i.e., by preliminary objections. *Freach v. Commonwealth*, 471 Pa. 558, 564–65 n. 6, 370 A.2d 1163, 1166–67 n. 6 (1977); *Swartz v. Masloff*, 62 Pa.Commonwealth Ct. [Pa.Cmwlth] 522, 437 A.2d 472 (1981). The proper manner for raising such a challenge is to file preliminary objections to the preliminary objections raising immunity.... *The appellant in this case did precisely that. The trial court therefore should have stricken the City's preliminary objections, thereby requiring the City to plead immunity from*

**12.** This Court has located few cases which actually applied the rule to the facts and found reversible error where the trial court considered an affirmative defense of immunity raised by preliminary objection in the face of an objection to the procedure. *See Beaver v. Coatesville Area School Dist.*, 845 A.2d 955 (Pa.Cmwlth.2004); *Jacobs v. Merrymead Farm, Inc.*, 799 A.2d 980 (Pa.Cmwlth.2002).

suit in new matter. We cannot assume that the appellant (McCreary) would not have raised the ordinance in question in a responsive pleading filed to the new matter. (Emphasis added.)

McCreary, 505 A.2d at 386 (emphasis added).

In *Iudicello v. Department of Transportation*, 34 Pa.Cmwlth. 361, 383 A.2d 1294 (1978), this Court rejected the exact argument that Feldman raises here. There, the plaintiff was injured when her bicycle tipped over due to the grade of a highway and she was run over by a car. She sued the Pennsylvania Department of Transportation (PennDOT). PennDOT filed preliminary objections which raised the defense of immunity. The plaintiff acknowledged the recent cases which disposed of immunity on preliminary objections. She argued, however, that those cases were distinguishable because in those cases, unlike in her situation, no objection was raised. This Court rejected the plaintiff's argument and found that, even where the plaintiff objects, where it is transparently clear on the face of the complaint that immunity applies, the trial court may consider the immunity defense to expedite the disposition of the case.

> [I]t is plaintiffs' position that immunity from suit is an affirmative defense and can be raised only by way of answer and new matter under Pa. R.C.P. No. 1030. They agree that this Court has, in a number of recent cases, disposed of immunity matters on preliminary objections.... *However, plaintiffs distinguish these cases saying that no objection was made by the plaintiffs in those cases and objection is being raised here. Recognizing considerable merit in plaintiffs' position on this procedural point, we can see no possible benefit to anyone in dismissing these preliminary objections and requiring an answer to*

be filed and having this matter more appropriately raised as new matter. *When it is transparently clear on the face of the complaint, as it is here from plaintiffs' own allegations, that the Commonwealth is immune, we will consider the matter in its present posture and thus expedite the disposition of the case.*

*Id.* at 1295 (citations omitted) (emphasis added).

In *Combs v. Borough of Ellsworth*, 151 Pa.Cmwlth. 21, 615 A.2d 462 (1992), this Court upheld an order of the Court of Common Pleas of Washington County which sustained the preliminary objections of the Bentworth School District which raised immunity by preliminary objection. There, a minor was injured when she crossed State Highway 917 at the intersection of Walnut Street. Her parents filed a complaint on her behalf against the Bentworth School District claiming that selection and designation of a school bus stop at that location created a dangerous condition and was the proximate cause of the minor's injuries. Bentworth School District filed preliminary objections and raised the defense of immunity pursuant to Sections 8541 and 8542 of the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541 and 8542. The minor plaintiff "failed to procedurally challenge the propriety of the School District's raising the immunity by way of preliminary objections." *Combs*, 615 A.2d at 463. The Court first acknowledged the cases which held that "preliminary objections raising the immunity defense may be considered if the opposing party waives the procedural defect." *Combs*, 615 A.2d at 463 (emphasis added.) The Court, however, rejected this approach and held:

> *Even if, in the present matter, this defect had not been waived by appellants,*

the Court traditionally has reasoned that:

> the affirmative defense of governmental immunity may be raised by preliminary objections in the nature of a demurrer where that defense is apparent on the face of the pleading; that is, that a cause of action is made against a governmental body and it is apparent on the face of the pleading that the cause of action does not fall within any of the exceptions to governmental immunity.

*Combs,* 615 A.2d at 464 (emphasis added).

In *Dorfman v. Pennsylvania Social Services Union Local 668 of Service Employees Intern. Union,* 752 A.2d 933 (Pa. Cmwlth.2000), this Court sustained preliminary objections which raised the defense of sovereign immunity despite the fact that the plaintiff, Edward Dorfman (Dorfman), filed preliminary objections challenging this procedure. There, Dorfman, an employee of the Commonwealth Department of Public Welfare, was fired from his job for unsatisfactory work performance. His union filed a grievance and protested his discharge. The union's grievance was denied. In preparation for arbitration, the union's investigator rendered an opinion that the union would not prevail at the arbitration. The union then notified Dorfman that it did not intend to arbitrate his grievance. Dorfman filed a petition for review in this Court's original jurisdiction and alleged that the Union had breached its duty of fair representation and breached the collective bargaining agreement executed with the Commonwealth. He also joined the Commonwealth as an indispensable party.

The Commonwealth filed preliminary objections and asserted the defense of sovereign immunity. Dorfman preliminarily objected to the Commonwealth's preliminary objections and simply contended that since he challenged the Commonwealth's preliminary objections with respect to the issue of immunity, these issues are properly addressed in an answer and new matter and not by way of preliminary objection. *Dorfman,* 752 A.2d at 935–936. This Court rejected the argument and held:

> Although Petitioner [Dorfman] has filed preliminary objections in the present case, we nevertheless believe that the issue of immunity can be addressed by way of preliminary objections, as Petitioner only identified the Commonwealth as a party and failed to identify any specific Commonwealth party which an exception to immunity applies.

*Dorfman,* 752 A.2d at 937, n. 6.

More recently, in *R.H.S. v. Allegheny County Department of Human Services, Office of Mental Health,* 936 A.2d 1218 (Pa.Cmwlth.2007), this Court upheld the trial court's grant of the Allegheny County Department of Health and Human Services' (Department) preliminary objections even though the plaintiff, R.H.S., filed preliminary objections to the Department's preliminary objections raising immunity. There, R.H.S. brought an action against the Department and alleged libel, negligence, and intentional infliction of emotional distress. The Department field preliminary objections raising immunity under Section 302 of the Mental Health Procedures Act.[13] R.H.S. filed preliminary objections to Defendants' preliminary objections and argued that Department followed an improper procedure by raising immunity as an affirmative defense.

Even though R.H.S. was "technically correct" that the Department prematurely raised immunity, this Court found no "reversible error" had occurred:

**13.** Act of July 9, 1976, P.L., *as amended,* 50 P.S. § 7302.

Plaintiff is technically correct that Defendants followed an improper procedure. But to amount to reversible error, the procedural defect must also cause harm. See Pa. R.C.P. No. 126 ('[t]he court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.'). However, Plaintiff fails to demonstrate how the timing of the immunity defense affects the ultimate conclusion that Defendants are immune from suit. So, for example, she does not suggest that further pleading will add new relevant facts. Absent a showing of prejudice, we discern no reversible error. Id.; see *Baravordeh v. Borough Council of Prospect Park*, 706 A.2d 362 (Pa.Cmwlth.1998).

*R.H.S*, 936 A.2d at 1227–1228.

This Court believes that it would serve no purpose to summarily reverse the trial court's order which sustained Dr. Hoffman's preliminary objections on the sole, procedural ground that Feldman filed preliminary objections to Dr. Hoffman's preliminary objections.[14] Rather than simply relying on the lone fact that she objected to a technical procedural error, this Court believes that the approach taken by the courts in *Iudicello, Combs, Dorfman,* and

R.H.S. is the more sound approach especially in light of the fact that here, Feldman failed to articulate before the trial court, and this Court, what effect, other than prolonging the matter, requiring Dr. Hoffman to wait until New Matter to raise his objection would have on the case. She identified no additional facts which she would have raised in response to New Matter had the defense been raised there. She does not suggest that further pleadings will add new facts. She does not allege that she was deprived of an opportunity to counter the immunity defense such as what happened in *McCreary*. She simply argues that "a full record should have been developed." Indeed, her Complaint specifically stated that Dr. Hoffman "at all times, acted under the color of state law." Complaint, ¶ 8 at 3; R.R. at 9a. There is no question that the doctrine of high official immunity applies with regard to claims for intentional infliction of emotional distress and conversion. *See Holt* (applying doctrine to hold county commissioners acting in their official capacity immune from suit intentional interference with contractual relations). This Court cannot fathom what additional facts are necessary to decide if Dr. Hoffman, as Coroner of Montgomery County, is entitled to high public official immunity.[15]

14. The Dissent would reverse the trial court based on the resolute argument that the Rules of Civil Procedure mandate that immunity must be raised in an Answer under New Matter, not as a preliminary objection. The Dissent completely ignores the reality that its hardline position has been outright rejected by countless courts. The fact remains, cases which hold the opposite of the Dissent's position are valid law. If we adopt the Dissent's position, we would, in effect be overruling other panels of this Court.

There is caselaw which clearly supports the trial court's decision to decide the immunity issue on preliminary objections, and this approach has been condoned by the Supreme Court. *See Stackhouse v. Com., Pennsylvania*

*State Police*, 892 A.2d 54 (Pa.Cmwlth.) (sovereign immunity may be raised in preliminary objections when to delay a ruling thereon would serve no purpose), appeal denied, 588 Pa. 760, 903 A.2d 539 (2006). How can the Dissent justify reversing a trial court when its decision is supported by decades of binding caselaw?

15. Feldman also argues that the trial court should have considered her preliminary objections before it ruled on Dr. Hoffman's preliminary objections, and she argues that her preliminary objections were left "undecided." First, to the extent that Feldman contends that the trial court *ignored* her preliminary objections, this Court is not convinced that

Moreover, as pointed out, the duties of the coroner are statutory. It is a matter of law for this Court to decide whether a county coroner is entitled to official immunity. Because that determination is apparent from the face of the Complaint, to reverse and remand the matter would be an exercise in futility.

### III.

■ Next, Feldman argues that the trial court erred when it considered matters outside her Complaint. Feldman contends that in Paragraphs 33 through 60 of Dr. Hoffman's preliminary objections, Dr. Hoffman improperly asserted defenses based on matters outside the pleadings. Specifically, he attached and referenced the Suicide Letter, which was not attached to Feldman's Complaint.

In *Cardenas v. Schober*, 783 A.2d 317 (Pa.Super.2001), the Superior Court held that a preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient, and no matters outside it may be considered. No testimony or other evidence outside the complaint may be considered to dispose of the legal issues presented by the demurrer.

■ However, it is well-settled that a court may rely on documents forming in part the foundation of the suit even where a plaintiff does not attach such documents to its complaint. *Conrad v. Pittsburgh*, 421 Pa. 492, 218 A.2d 906 (1966); *Detweiler v. School Dist. Of Hatfield*, 376 Pa. 555, 104 A.2d 110 (1954); *see also St. Peter's*

*Roman Catholic Parish v. Urban Redevelopment Authority of Pittsburgh*, 394 Pa. 194, 146 A.2d 724 (1958) (where complaint refers to various documents in order to establish plaintiff's claim but the complaint contains only one of them as an exhibit, exhibits attached to a preliminary objection may be referred to).

■ Documents, the contents of which are alleged in Complaint and which no party questions, but which are not physically attached to the pleading, may be considered on motion to dismiss for failure to state a claim. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993).

Here, the Suicide Letter was part of the foundation of the lawsuit even though Feldman did not attach it to her Complaint. Feldman averred the existence of the Suicide Letter and premised both causes of action upon this document. The Suicide Letter was, therefore, a factual matter which arose out of the Complaint. Feldman based her claims of conversion and attempted to assert a property right *in the Letter*. Her claim to ownership of the Suicide Letter was, in part, dependent upon its contents and how it was addressed.

For the foregoing reasons, this Court finds that the trial court did not err when it granted Dr. Hoffman's preliminary objections and dismissed Feldman's Complaint with prejudice.

The order of the trial court is affirmed.

---

her preliminary objections were left unaddressed. In its Opinion dated December 26, 2013, the trial court specifically considered Feldman's argument that immunity may not be raised by preliminary objection and rejected it because "the defense clearly applied to the instant action." Trial Court Opinion, December 26, 2013, at p. 3. Although the trial

court did not issue a separate order overruling Feldman's preliminary objections, it is abundantly clear that this was the trial court's intention when it sustained the Coroner's preliminary objections. In any event, this Court has determined that Feldman's preliminary objections were without merit.

## ORDER

AND NOW, this 19th day of December, 2014, the order of the Montgomery County Court of Common Pleas in the above-captioned matter is hereby AFFIRMED.

DISSENTING OPINION BY President Judge PELLEGRINI.

I respectfully dissent because we have no authority to overrule the express provisions of the Rules of Civil Procedure.

There is no dispute that immunity is an affirmative defense. The question here is whether it can be raised in a preliminary objection or as New Matter. The Pennsylvania Rules of Civil Procedure are clear that as an affirmative defense, immunity must be raised in an Answer under New Matter, not as a preliminary objection. Pa. R.C.P. No. 1030 provides:

> (a) Except as provided by subdivision (b), all affirmative defenses including but not limited to the defenses of . . . immunity from suit . . . shall be pleaded in a responsive pleading under the heading "New Matter". A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading.

Not only does this Rule provide that the affirmative defense of immunity must be raised in New Matter, our Supreme Court's last pronouncement on this issue in *Callsen v. Temple University Hospital*, 539 Pa. 377, 652 A.2d 824, 826 (1995), stated that "under Pa. R.C.P. No. 1030 immunity defenses must be raised as new matter and not as preliminary objections."

We have considered the defense of immunity raised in preliminary objections when the opposing party does not object to it being raised in preliminary objections. In *Higby Development, LLC v. Sartor*, 954 A.2d 77, 84 (Pa.Cmwlth.2008), we stated that:

> Pa. R.C.P. No. 1030(a) provides that immunity from suit is an affirmative defense that must be raised in a responsive pleading under the heading of "new matter." However, a limited exception to this Rule has been created allowing the raising of the affirmative defense of governmental immunity as a preliminary objection when it is clearly applicable on the face of the complaint and where the plaintiff raises no objection. *Sweeney v. Merrymead Farm, Inc.*, 799 A.2d 972 (Pa.Cmwlth.2002). Additionally, where a substantive defense is raised in preliminary objections, the failure of the opposing party to file preliminary objections to those preliminary objections waives any procedural defect and allows the trial court to rule on the preliminary objections. *Heinrich v. Conemaugh Valley Memorial Hospital*, [648 A.2d 53 (Pa.Super.1994)]. Here, it was evident on the face of Developer's complaint that governmental immunity was applicable, and while Developer had the opportunity to file preliminary objections to the preliminary objections filed by Sartor and Yerkes, it did not. Because Developer did not do so, Developer waived the issue regarding immunity, and the trial court properly ruled on their preliminary objections. (Footnotes omitted.)

*See also Freach v. Com.* 471 Pa. 558, 370 A.2d 1163 (1977);[1] *Richmond v. McHale,*

---

1. "It is to be noted that immunity from suit is an affirmative defense which should be pleaded under the heading 'New Matter' in a responsive pleading; it is not properly raised by preliminary objections. See Pa. R.C.P. No. 1030. Since, however, the plaintiffs-appel- lants did not object at any point in the proceedings before the Commonwealth Court to the manner in which the issue of immunity was raised and the Commonwealth Court decided the immunity questions on their merits, we will do likewise. **By so doing we do not**

35 A.3d 779 (Pa.Super.2012). That reasoning is consistent with the principle that when a party does not object to a nonjurisdictional defect, that matter is waived. In this case, however, the plaintiff has objected by filing preliminary objections to Hoffman's preliminary objections objecting to not raising the affirmative defense in new matter.

The question then becomes when a plaintiff follows our Supreme Court, the Superior Court as well as this court's instruction to file a preliminary objection to a preliminary objection when the plaintiff improperly raised immunity by a preliminary objection, can we nonetheless still decide the immunity issue pled in a preliminary objection. The majority gives two reasons why it can do so even though it violates Pa. R.C.P. No. 1030.

The first reason the majority gives is judicial expediency stated in *Iudicello v. Commonwealth, Department of Transportation*, 383 A.2d 1294 (Pa.Cmwlth.1978) and *Combs v. Borough of Ellsworth*, 151 Pa.Cmwlth. 21, 615 A.2d 462 (1992), which both stand for the proposition expressed in *Iudicello*, 383 A.2d at 1295:

> However, plaintiffs distinguish these cases saying that no objection was made by the plaintiffs in those cases and objection is being raised here. Recognizing considerable merit in plaintiffs' position on this procedural point, we can see no possible benefit to anyone in dismissing these preliminary objections and requiring an answer to be filed and having this matter more appropriately raised as new matter. When it is transparently clear on the face of the complaint, as it is here from plaintiffs' own allegations, that the Commonwealth is immune, we will consider the matter in its present

condone the disregard of the Pennsylvania Rules of Civil Procedure by appellees."

posture and thus expedite the disposition of the case.

The other reason it advances is the one used in *R.H.S. v. Allegheny County Department of Human Services, Office of Mental Health*, 936 A.2d 1218 (Pa.Cmwlth. 2007), that this defect can be ignored under Pa. R.C.P. No. 126 which allows a court to disregard a defect in procedure. In *R.H.S.*, 936 A.2d at 1227–28, we stated:

> Plaintiff is technically correct that Defendants followed an improper procedure. But to amount to reversible error, the procedural defect must also cause harm. *See Pa. R.C.P. No. 126* ('[t]he court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.'). However, Plaintiff fails to demonstrate how the timing of the immunity defense affects the ultimate conclusion that Defendants are immune from suit. So, for example, she does not suggest that further pleading will add new relevant facts. Absent a showing of prejudice, we discern no reversible error. (Emphasis added.)

However, ignoring a Rule of Civil Procedure is not the type of defect that a court is allowed to disregard under Pa. R.C.P. No. 126. That Rule is only available to a party who has made an attempt to comply with the Rules of Civil Procedure and is not a blanket rule that allows us to ignore a Rule just because it is expeditious to do so. As our Supreme Court stated in *Womer v. Hilliker*, 589 Pa. 256, 908 A.2d 269, 278 (2006):

> The equitable doctrine we incorporated into Rule 126 is one of substantial compliance, not one of no compliance.

*Freach*, 370 A.2d at 1172. (Emphasis added.)

We reiterate what our case law has taught: **Rule 126 is available to a party who makes a substantial attempt to conform, and not to a party who disregards the terms of a rule** in their entirety and determines for himself the steps he can take to satisfy the procedure that we have adopted to enhance the functioning of the trial courts. (Emphasis added.)

In this case, Pa. R.C.P. No. 1030 requires that an affirmative defense be pleaded in a responsive pleading under the heading "New Matter." By filing a preliminary objection raising the affirmative defense of immunity, the defendant disregards that Rule, making Pa. R.C.P. No. 126 unavailable. See *footnote* 1.

Just because it would be easier to decide it and "end the matter" when the immunity issue is "obvious on its face of the pleading," then we are, in essence, converting an affirmative defense that must be pled under Pa. R.C.P. No. 1030 into a preliminary objection under Pa. R.C.P. No. 1028, something we cannot do. When the Supreme Court promulgated Pa. R.C.P. No. 1030 and made immunity an affirmative defense, it made the determination that a court would be better served in deciding that after there is a better delineation of the facts that results when an Answer and New Matter is filed. The immunity issue can then be determined either by a Motion for Judgment on the Pleadings or a Motion for Summary Judgment.

While I recognize that considering immunity in preliminary objections where it is obvious "on its face" is expeditious, our Supreme Court has instructed us that it "is self-evident that our Rules of Civil Procedure are essential to the orderly administration and efficient functioning of the courts. Accordingly, we expect that litigants will adhere to procedural rules as they are written, and take a dim view of litigants who flout them." *Womer*, 908 A.2d at 276.[2]

Because we cannot rewrite the Rules of Civil Procedure, I respectfully dissent.

---

**2.** In footnote 14, rather than address the points that the dissent makes, the majority states that the dissent ignores "the reality that its hardline position has been outright rejected by countless courts." "Countless courts" have not followed Pa. R.C.P. 1030, just our court, and not in "countless" decisions, but just "some" decisions which are inconsistent with other decisions. As the majority points out, there are two lines of cases and I chose to follow one line that is conformance with the Rules promulgated by the Supreme Court. Silly me. To answer its question of how can I justify reversing a trial court when the decision is supported by decades of what the majority calls binding, but I would call inconsistent case law, that answer is simple—read the dissent.