772 A.2d 68

Warren DURHAM, Jr., Appellant

v.

Christopher McELYNN, Appellee.

Supreme Court of Pennsylvania.

Submitted March 2, 2001.

Decided May 21, 2001.

Reargument Denied July 10, 2001.

Warren Durham, appellant pro se.

Eric John Purchase, Thomas A. Pendleton, Erie, for appellee Christopher McElynn.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION OF THE COURT

FLAHERTY, Chief Justice.

This is an appeal by allowance from an order of Superior Court which affirmed an order granting preliminary objections of the appellee, Christopher McElynn, in a tort action brought by the appellant, Warren Durham, Jr.

In 1996, while employed as an assistant district attorney in Erie County, McElynn prosecuted Durham for various crimes. Convictions were obtained, and, as a result, Durham is serving a sentence at the state correctional institution at Graterford.

In 1998, Durham filed a tort action alleging that in the course of his prosecution various constitutional rights were violated by McElynn, in that McElynn allegedly allowed perjured testimony to be used at a preliminary hearing and at trial, and, further, alleging that McElynn prevented him from presenting a certain witness at trial. McElynn filed preliminary objections claiming immunity from suit for actions taken in his capacity as a prosecutor. The trial court granted the preliminary objections. Superior Court affirmed.

The sole issue presented is whether McElynn is immune from suit for actions taken in his official capacity. We agree with the courts below that immunity applies, and, thus, that preliminary objections to Durham's suit were properly granted.

It has long been held that high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties. This common law doctrine of tort immunity existed before enactment of the Political Subdivision Tort Claims Act, 42 P.S. § 8541 et seq., and was not abrogated by it. *Lindner v. Mollan*, 544 Pa. 487, 492–93, 677 A.2d 1194, 1196 (1996).

Describing the scope of common law immunity, this court stated in *Matson v. Margiotti*, 371 Pa. 188, 193–94, 88 A.2d 892, 895 (1952),

> *Absolute privilege*, as its name implies, is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction* . . . .

(Emphasis in original; citations omitted). In *Matson* the immunity of the Attorney General of Pennsylvania was at issue, and the rationale for applying the privilege to law enforcement officials was set forth as follows:

Even though the innocent may sometimes suffer irreparable damage, it has been found to be in the public interest and therefore sounder and wiser public policy to "immunize" public officials, for to permit slander, or libel, or malicious prosecution suits, where the official's charges turn out to be false, would be to deter all but the most courageous or the most judgment-proof public officials from performing their official duties and would thus often hinder or obstruct justice and allow many criminals to go unpunished.

371 Pa. at 203, 88 A.2d at 899–900. See also *Montgomery v. Philadelphia,* 392 Pa. 178, 183, 140 A.2d 100, 103 (1958) (absolute immunity removes any inhibitions that might deprive the public of the best service of its high officials).

The standard used to determine who qualifies as a "high public official" was described in *Lindner v. Mollan* as focusing on the nature of the duties of the particular public officer, the importance of his office, and whether or not he has policy-making functions. 544 Pa. at 495, 677 A.2d at 1198.

Superior Court has held that immunity for high public officials extends to district attorneys. *McCormick v. Specter,* 220 Pa.Super. 19, 275 A.2d 688 (1971) (district attorney who was sued for defamation as a result of statements made at a press conference was immune, since the statements were made in the course of his official duties to inform the public regarding a matter pending in his office). In applying immunity to district attorneys, the court emphasized that "it is the public interest—not that of the official involved—which provides the rationale for the immunity." 220 Pa.Super. at 22, 275 A.2d at 689. In *Mosley v. Observer Publishing Co.,* 422 Pa.Super. 255, 619 A.2d 343 (1993), appeal denied, 535 Pa. 622, 629 A.2d 1382 (1993), Superior Court again accorded district attorneys absolute immunity.

In *Lindner v. Mollan,* 544 Pa. at 496–98, 677 A.2d at 1198–99, we repeatedly cited with approval both *McCormick* and *Mosley.* The public interest requires that district attorneys be able to carry out their duties without being hampered by civil suits claiming damages for actions taken in their official

capacities. The public would indeed suffer if the prosecution of criminals were impeded, as would be the case if district attorneys were not accorded absolute immunity.

Durham contends, however, that assistant district attorneys do not have the immunity that has been afforded district attorneys. In particular, he asserts that assistant district attorneys are not "high public officials," inasmuch as they serve only at the will of their employer and have only the authority delegated by the district attorney and are not policy-making officials. Assistant district attorneys, however, are essential to district attorneys in fulfilling responsibilities of their high public offices, to wit, in carrying out the prosecutorial function. To subject assistant district attorneys acting on behalf of the district attorney to liability would deter all but the most courageous and most judgment-proof from vigorously performing their prosecutorial functions, and would inevitably result in criminals going unpunished. See *Matson*, supra. The fact that assistant district attorneys, unlike their principal, the district attorney, are not known for policy-making functions is not pivotal to the immunity determination. As we noted in *Lindner*, 544 Pa. at 496, 677 A.2d at 1198, the "high public official" umbrella of immunity has in many instances been extended to a wide range of public officials whose policy-making roles were not salient. While it is often the case that "high public officials" have policy-making functions, that is not the sole or overriding factor in determining the scope of immunity. Rather, it is the public interest in seeing that the official not be impeded in the performance of important duties that is pivotal. That interest dictates that assistant district attorneys be immune from suit.

Superior Court correctly held, therefore, that McElynn's preliminary objections to the tort action brought by Durham were properly granted on the basis of absolute immunity.

Order affirmed.