Marc E. **MANDEL**, Plaintiff

v.

**THE BOSTON PHOENIX INC., et al., Defendants.**

**No. CIV.A. 03–10687–EFH.**

United States District Court, D. Massachusetts.

June 9, 2004.

Jennifer J. Coyne, Miles & Stockbridge, P.C., Towson, MD, Mary Alys Azzarito, Solo Practioner, Salem, MA, Stephen J. Cullen, Miles & Stockbridge, P.C., Towson, MD, for Marc E. Mandel, Plaintiff.

Daniel J. Gleason, Rebecca L. Shuffain, Nutter, McClennen & Fish, LLP, Boston, MA, Robert L. Hanley, Nolan, Plumhoff & Williams, Towson, MD, for The Boston Phoenix Inc., ta The Boston Phoenix, ta The Phoenix.com, The Phoenix/Media Communications Group, Inc., Peter Kadzis, Susan Ryan–Vollmar, Tamara Wieder, Kristen Lombardi, Phoenix Media Ventures, Inc., The Boston Phoenix, LLC, Defendants.

### *MEMORANDUM AND ORDER*

HARRINGTON, Senior District Judge.

This defamation action comes before the Court on cross motions for summary judg-

ment. These motions call for the Court to decide whether the Plaintiff Marc Mandel ("Mandel") was a public official by virtue of his job as an Assistant State's Attorney for the State of Maryland at the time Defendant Boston Phoenix published allegedly defamatory statements about him. The Court concludes that Mandel was not a public official, and, thus, denies Defendants' Motion for Summary Judgment and grants Plaintiff's Motion for Summary Judgment on the Public Official/Figure Issue. The Court shall rule on Plaintiff's Motion for Summary Judgment on the Issue of Whether the Statements in the Article Constitute Defamation Per Se at the time of trial.

## I. *FACTS*

In its January 9–16, 2003 issue, Defendant The Boston Phoenix newspaper ("the Phoenix") printed an article entitled "Children at Risk" ("the article"), which grew out of research into the failures of family courts to deal with allegations of child abuse. The article also appeared on www.bostonphoenix.com.[1]

Plaintiff Mandel complains of statements in a section of the article subtitled "Losing custody to a child molester," which examines his custody battle with his former wife. Specifically, Mandel claims that the subtitle quoted above refers to him and, thus, calls him a child molester. He claims that the article further defames him by stating that he "had assaulted" his daughter from his first marriage and that he "is a man who Baltimore, Maryland child-protection workers believe is a child molester."[2]

The Phoenix responded by filing a Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment. This motion requested the Court to rule that Mandel's position as an Assistant State's Attorney for the State of Maryland rendered him a public official. As a public official, Mandel would be required to establish proof by clear and convincing evidence that any defamatory statement was published with actual malice. See *New York Times v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The Court denied the Phoenix's motion and a counter-motion from Mandel on October 23, 2003, stating that it would entertain renewed motions at the close of discovery. The Court does so now.

## II. *DISCUSSION*

The summary judgment standard applicable to this case is familiar. Judgment should be granted where the evidence, taken in the light most favorable to the non-moving party, shows that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

As noted above, the question before the Court is whether Mandel is a public official. The resolution of this issue has consequences on the future course of litigation between these parties. If Mandel is a public official, he must show not only that the statements published by the Phoenix about him are defamatory under Massachusetts law, but also that they were published with "actual malice," that is, with knowledge of their falsity or with

---

1. Named as Defendants in this action are The Boston Phoenix, Inc., The Boston Phoenic, LLC, The Phoenix/Media Communications Group, Inc., Peter Kadzis, Susan Ryan–Vollmar, and Kristen Lombardi.

2. The complete statements complained of appear in footnotes 4–6 of the Memorandum of Law in Support of Defendants' Renewed Motion for Summary Judgment (Def.Mem.) at 4.

reckless disregard for their truth. *New York Times Co. v. Sullivan,* 376 U.S. 254, 283, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Because the "actual malice" standard furthers First Amendment interests, the determination of public official status is a question of federal law, typically determined by the Court as a matter of law. *See Nicholson v. Promotors on Listings,* 159 F.R.D. 343, 351 (D.Mass.1994).

■ The Court first observes that not every public employee is a public official for defamation purposes; indeed, in the context of libel law, only those employees with "substantial responsibility for or control over the conduct of government affairs" are deemed public officials. *Kassel v. Gannett Co.,* 875 F.2d 935, 939 (1st Cir.1989) (quoting *Rosenblatt v. Baer,* 383 U.S. 75, 85, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966)). Acknowledging that this formulation is "easier stated than applied," the First Circuit has observed that "a trio of policy concerns" undergird the Supreme Court public official caselaw. *Id.* Consequently, the First Circuit has employed the metaphor of a "Three–Legged Stool" to clarify its own analysis. *Id.*

■ Recognizing that the First Amendment requires "maximum latitude for ... discourse on issues of public importance," the first leg of the stool calls upon the Court to examine the "inherent attributes of the position" to determine whether the person is in a position to make government policy or to manage government operations. *Kassel,* 875 F.2d at 939. The First Circuit notes that "policymakers, upper-level administrators, and supervisors" are most likely to be designated public officials. *Id.* In the present case, Mandel did not serve as a policymaker, administrator or supervisor. As an Assistant State's Attorney, he was the lowest-level prosecutor in the Maryland court system.

Defendants argue that because "Mandel's position carried duties and powers that impact everyday lives, the abuse of which can cause social harm, ... Mandel's position invites public scrutiny and discussion." Def. Mem. at 8. However, the facts alleged by defendants reveal that he did ordinary legal work in the State's Attorney office. No facts indicate that he exercised significant judgment without close oversight by his superiors. Like the government staff psychologist whom the First Circuit ruled was not a public official in *Kassel,* Mandel "fell below the middle of the ... organization chart. He did not routinely supervise, manage, or direct government operations. He did not formulate policy." 875 F.2d at 940. Rather, Mandel executed policy, albeit in a legal rather than in a medical context. Removed as he was from the policymaking functions of the State's Attorney's office, Mandel's position simply did not "invite public scrutiny and discussion of the person holding it," *id.* at 940–41.[3]

Defendants rely on *Rotkiewicz v. Sadowsky,* in which the Massachusetts Supreme Judicial Court decided that police officers are public officials for purposes of defamation claims. 431 Mass. 748, 748–49, 730 N.E.2d 282 (2000). However, the features of a police officer's job that the Massachusetts court focused on are not necessarily common to an Assistant

---

**3.** In their Statement of Undisputed Facts, Defendants report two occasions on which Mandel's work generated negative responses. Def. St. Facts ¶¶ 17, 18. On the first occasion, the victim of the crime complained of Mandel's handling of her case, and on the second occasion, Mandel's supervisor criticized his performance in court and interactions with a potential witness. *Id.* In no instance cited to this Court did a member of the general public, not interested in the matter at hand, comment on Mandel's conduct of his duties.

State's Attorney position. The Massachusetts court concluded that police officers are public officials "because of the broad powers vested in police officers and the great potential for abuse of those powers, as well as police officers' high visibility within and impact on a community." *Id.* at 752, 730 N.E.2d 282. The Supreme Judicial Court specifically noted that police officers carry out their functions in "the home, the place of work and of recreation, the sidewalks and streets," indicating a high degree of interaction with the public. *Id.* at 753, 730 N.E.2d 282. Further, police officers "have the ability and authority to exercise force." *Id.* at 754, 730 N.E.2d 282. Prosecutors are less visible in the community than police officers, tending to work in courts and offices rather than in the community among the general public. Surely, prosecutors do not have authority to exercise force to compel compliance with their demands. As a result, there is far less potential for abuse of prosecutors' powers on a daily basis than for abuse of police officers' powers.[4]

■ The second leg of the *Kassel* stool calls on the Court to examine whether Mandel had access to the press as a means of defending himself. *Kassel,* 875 F.2d at 939–40. The First Circuit directs that "government workers who, by virtue of their employment, may easily defuse erroneous or misleading reports without judicial assistance should more likely be ranked as 'public officials' for libel law purposes." *Id.* at 940. While it is undisputed that "[p]rosecutors in Baltimore County, Maryland have access to the press," Mandel has claimed, and it is not disputed, that in his case "supervisors han-

dled any press inquiries related to [his] employment." Def. St. Facts ¶ 16. Further, there is no evidence of any contact between Mandel and the press regarding any topic during his employment as an Assistant State's Attorney. Thus, although press access appears to be a theoretical possibility for someone in Mandel's position, it does not appear to be the practical means of self-help which the First Circuit envisions.

■ The third leg of the *Kassel* stool asks the Court to examine whether Mandel assumed the risk of diminished privacy by entering into government employment. 875 F.2d at 940. The First Circuit observes that the "classic case" constituting a public official involves a person who is "elected," or "appoint[ed] to [a] powerful government position[ ]." *Id.* Mandel was not elected nor was he given a political appointment; he was instead hired upon application and interview. Further, the position he was hired for was like "many public sector jobs" in that it bore with it "no special prospect of life in a fishbowl." *Id.*

## III. CONCLUSION

A free press is the artery through which the life blood of a democracy flows; it is the vehicle by which the electorate is informed of the vital public issues that must be openly and vigorously debated prior to resolution by its elected representatives. For an informed electorate is the necessary condition of responsible and effective government.

---

4. Defendants also rely on the persuasive force of *Durham v. McElynn,* 565 Pa. 163, 772 A.2d 68 (2001). However, this case did not involve a defamation claim. Instead, *Durham* considered whether assistant district attorneys in the Commonwealth of Pennsylvania were "high public officials" for purposes of immunity from suit for actions taken in their official capacity. *Id.* at 69. In concluding that they are, the *Durham* court set forth rather different policy considerations than those outlined by the First Circuit in *Kassel. Id.*

But even a free press, when it publishes a report on the activities of a private citizen, must be keenly sensitive to the Shakespearian admonition: "Who steals my purse steals trash ... but he that filches from me my good name robs me of that which not enriches him and makes me poor indeed." A citizen's good name is as precious to him as is his life itself and must, therefore, be as assiduously protected by the law. The First Amendment does not immunize the press from defaming a private person who lacks the power or prestige to cleanse the indelible stain from the image of his reputation.

In light of the foregoing analysis, this Court concludes that Plaintiff Mandel is not a public figure for purposes of this defamation action. Thus, the Court denies Defendants' Motion for Summary Judgment and grants Plaintiff's Motion for Summary Judgment on the Public Official/Figure Issue.

SO ORDERED.