# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vincent N. Melchiorre          :
                               :
        v.                     : No. 1186 C.D. 2021
                               : Argued: November 14, 2022
Simon Haileab, Esquire,        :
                               :
                Appellant      :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ELLEN CEISLER, Judge (P)
          HONORABLE STACY WALLACE, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED:  February 27, 2023


Simon Haileab, Esq. (Haileab), a former Assistant District Attorney (ADA) of the Philadelphia District Attorney's Office (DA's Office), appeals from the October 20, 2021 order of the Philadelphia County Court of Common Pleas (trial court)[1] that denied, in part, his Motion for Summary Judgment to former Philadelphia County Court of Common Pleas Judge Vincent N. Melchiorre's (Melchiorre) civil action against Haileab involving claims of defamation, false light, and tortious interference. Haileab argues that the trial court erred in determining that he was not entitled to "absolute immunity" from civil liability for statements he allegedly made within the scope of his authority as an ADA. Also before this Court is Melchiorre's Motion to Quash the appeal for lack of jurisdiction and Haileab's

---

[1] The Honorable Robert Shenkin, a senior judge of the Chester County Court of Common Pleas, was assigned to the case as an out-of-county judge.

Answer in response. For the reasons that follow, we grant Melchiorre's Motion to Quash and quash Haileab's appeal.

On March 19, 2018, Melchiorre filed a Complaint in the trial court against ADA Haileab and the DA's Office. At the time of the events at issue, Melchiorre was a judge appointed to the trial court, and Haileab was an ADA in the DA's Office. In the Complaint, Melchiorre alleged that, on March 6, 2017, he met with Haileab and defense counsel in chambers to discuss the continuance of a criminal trial. Following that meeting, Haileab allegedly returned to the DA's Office and told senior members of the DA's Office that Melchiorre had called Haileab's supervisor, a female Senior ADA, a derogatory and vulgar name ("c*nt"). Melchiorre denied that he called the Senior ADA a derogatory name. Melchiorre alleged that Haileab made the statement to deflect criticism from his supervisors regarding his poor job performance, and the statement was not made within his official duties.

Melchiorre further alleged that, as a result of Haileab's statements, the Senior ADA reported the statements to the DA's Office's Acting Chief Integrity Officer, who, in turn, reported the statements to the Deputy DA. According to the Complaint, the Acting Chief Integrity Officer and the Deputy DA then reported the alleged statement to the Philadelphia Bar Association. Thereafter, the Philadelphia Bar Association downgraded its endorsement of Melchiorre, who was then running in the upcoming election to keep his appointed seat, from "recommended" to "not recommended." Complaint, ¶12; Reproduced Record at 4a. As a result of the downgrade in the endorsement, Melchiorre claimed that he lost several other endorsements, and ultimately lost his bid to obtain a ballot position as a Democratic

2

candidate in the 2017 General Election for one of several open seats to serve as a judge on the trial court.

Melchiorre's Complaint set forth causes of action against Haileab for defamation, false light, and tortious interference with contractual relations. The Complaint also set forth the same claims against the DA's Office with an additional claim that the DA's Office was vicariously liable for its employees' defamatory publications.

In response, Haileab and the DA's Office both filed Preliminary Objections (POs) to the Complaint. Haileab asserted, among other defenses, absolute immunity from civil liability as a high public official for statements that he allegedly made within the scope of his authority as an ADA. The DA's Office preliminarily objected on the grounds that the Complaint failed to allege that the DA's Office had acted with actual malice when it reported the alleged statements and that it was entitled to governmental immunity under Sections 8541-42 of the Judicial Code, commonly referred to as the Political Subdivision Tort Claims Act, 42 Pa. C.S. §§8541-42.

By order dated March 4, 2019, the trial court sustained the DA's Office's POs and dismissed it from the case. However, the trial court overruled Haileab's POs. The trial court determined that discovery was necessary to ascertain whether Haileab was entitled to high public official immunity.

Haileab appealed the trial court's order to this Court asserting jurisdiction on the basis that the order was a collateral order as defined by Pennsylvania Rule of Appellate Procedure 313, Pa. R.A.P. 313 (Rule 313). We disagreed. We determined that the denial of Haileab's POs asserting high public official immunity was not separable from the main cause of action. We explained

that Melchiorre's Complaint alleged specific conduct by Haileab that, if proven, would fall outside the scope of Haileab's official duties as an ADA. Because further factual development through discovery was necessary, we declined to invoke the collateral order doctrine to resolve the immunity question. Thus, we quashed Haileab's appeal. *See Melchiorre v. Haileab* (Pa. Cmwlth., No. 741 C.D. 2019, filed March 15, 2021).

Thereafter, the parties engaged in discovery. Following the close of discovery, Haileab filed a Motion for Summary Judgment seeking judgment on the tortious interference claim, which Melchiorre did not contest, and reasserting absolute immunity as a high public official. On October 20, 2021, the trial court granted the Motion for Summary Judgment, in part, and entered judgment in Haileab's favor with respect to Melchiorre's tortious interference claims.

However, the trial court otherwise denied the Motion and specifically rejected Haileab's absolute immunity defense. After summarizing the standard for summary judgment motions, the trial court explained:

> Summary judgment may be entered only in cases that are clear and free from doubt. No matter how **unlikely** it might appear that the non-moving party might prevail, any possibility of that even occurring is sufficient to defeat such motion. Reviewing the record in the light most favorable to the non-moving party requires not only that all contested facts be resolved in favor of the non-moving party but all reasonable inferences from **those** facts must be drawn in favor of the non-moving party. Viewed in this light, the record does not support [Haileab]'s contention that there is no possibility that [Melchiorre] could prevail. We again reject the concept that [Haileab] in this case is entitled to **absolute** immunity. [Haileab] relies heavily upon prior statements but for the most part, if not entirely, these statements are not judicial admissions and are not binding on [Melchiorre] even if they are his own statements.

4

Trial Court Order, 10/20/21, at 1 n.1 (emphasis in original).

In the trial court's Pa. R.A.P. 1925(a) Opinion that followed, the trial court recognized that absolute immunity exempts a high public official from all civil suits provided the statements are made within the course of the official's duties or power and within the scope of his authority. However, the trial court determined "it is not clear and free from doubt that the record in this case, excluding testimonial statements by which [Melchiorre] is not bound, mandates a finding that [Haileab's] actions were taken in the course of his official duties or powers and within the scope of his authority." Trial Court Op., 1/24/22, at 2. This appeal now follows.[2] In response, Melchiorre filed a Motion to Quash asserting that this Court lacks jurisdiction on the basis that the order appealed from is not a collateral order, which we address first.[3]

Melchiorre contends that Haileab's appeal should be quashed for a lack of jurisdiction because the order appealed is not a collateral order as defined by Rule 313(a) because it does not satisfy all three elements of the collateral order rule of separability, importance, and irreparable loss. First, Melchiorre argues that the trial court's order relating to absolute immunity is not separable because it is inextricably intertwined to the main cause of action. Second, he maintains that, if review of the order is postponed, Haileab's claim will not be irreparably lost because the trial court may rule on summary judgment before trial.

Rule 313 governs collateral orders and provides:

---

[2] "This Court's review of a trial court's order granting or denying a motion for summary judgment is limited to determining whether the trial court committed an abuse of discretion or an error of law." *Sacco v. Township of Butler*, 863 A.2d 611, 613 (Pa. Cmwlth. 2004).

[3] Haileab filed an unopposed Application for Stay of Trial Pending Appeal, which this Court granted on September 19, 2022.

5

(a) General rule.--An appeal may be taken as of right from a collateral order of a trial court or other government unit.

(b) Definition.--A collateral order is [(1)] an order separable from and collateral to the main cause of action [(2)] where the right involved is too important to be denied review and [(3)] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa. R.A.P. 313. In short, Rule 313 tests "separability, importance, and irreparable loss." *Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 364 (Pa. 2021). "[W]here an order satisfies Rule 313's three-pronged test, an appellate court may exercise jurisdiction even though the order is not final." *Id.* at 370.

"If the test is not met, however, and in the absence of another exception to the final order rule, there is no jurisdiction to consider an appeal of such an order." *Brooks*, 259 A.3d at 370. "As an exception to the rule of finality, the collateral order rule is interpreted narrowly, and each prong must be satisfied before an order will be considered on appeal." *Sylvan Heights Realty Partners, L.L.C. v. LaGrotta*, 940 A.2d 585, 587 (Pa. Cmwlth. 2008); *see Brooks*, 259 A.3d at 373.

It is well settled that "an immunity defense does not, in and of itself, entitle a litigant to appellate review of an interlocutory order." *Gwiszcz v. City of Philadelphia*, 550 A.2d 880, 881 (Pa. Cmwlth. 1988). Because this appeal requires us to determine whether a decision denying Haileab's official immunity defense meets the collateral order doctrine, we examine the general principles of official immunity.

The common law doctrine of "high official immunity" insulates "high-ranking public officials" from all statements made and acts taken in the course of their official duties. *Feldman v. Hoffman*, 107 A.3d 821, 826 (Pa. Cmwlth. 2014). DAs and ADAs are considered high public officials entitled to such protection for

statements made in the course of their official duties. *Durham v. McElynn*, 772 A.2d 68, 69 (Pa. 2001). The statements and actions must be "closely related" to the performance of official duties. *McCormick v. Specter*, 275 A.2d 688, 689 (Pa. Super. 1971).

In *Lindner v. Mollan*, 677 A.2d 1194, 1195 (Pa. 1996), our Supreme Court explained:

> [T]he doctrine of *absolute privilege for high public officials*, as its name implies, is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.*

> \* \* \*

> [It is] designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before the jury. And yet, beyond this lies a deeper purpose, the protection of society's interest in the unfettered discussion of public business and in full public knowledge of the facts and conduct of such business.

(Citations omitted and emphasis added).

Indeed, "the public interest is best served by granting broad immunity to high-ranking officers . . . ." *Feldman*, 107 A.3d at 826-27. As our Supreme Court observed, promoting the "unfettered discharge of public business and full public knowledge of the facts and conduct of such business. [High public official] immunity is thus a means of removing any inhibition which might deprive the public

7

of the best service of its officers and agencies." *Montgomery v. City of Philadelphia*, 140 A.2d 100, 103-04 (Pa. 1958).

To illustrate, in *Sylvan Heights*, prospective purchasers of a county nursing home brought action against a member of the Pennsylvania House of Representatives for tortious interference with a contract, alleging that the representative's actions caused the county to breach its contract with purchasers. The purchasers alleged that the representative's tortious conduct was outside the scope of his jurisdiction and duties as a state legislator. The representative interposed a motion for judgment on the pleadings based on immunity. The trial court denied the motion and the representative appealed. The purchasers filed a motion to quash on the basis that the order was not a collateral order. We determined that, although the right to assert official immunity is of sufficient importance to satisfy the second element, the first and third elements were not met.

With regard to the first element, we explained:

> Distilled to its essence, [the representative's] argument is that the Speech or Debate Clause allows any legislator to avoid trial, or even discovery, in any matter, wherein the alleged tortious conduct has even a tangential connection with the legislator's official duties. The [purchasers] here have alleged conduct which, if proven, would be clearly *outside the legislative sphere*.

*Sylvan Heights*, 940 A.2d at 588. Because the immunity issue was not separable from the main action, we granted the motion to quash. *Id.*; *see also Bollinger by Carraghan v. Obrecht,* 552 A.2d 359, 363 (Pa. Cmwlth. 1989) (quashing an appeal from the denial of summary judgment, where "[t]he affirmative immunity defenses[] being asserted in the pleadings[] raise[d] factual and legal issues to be decided in the

8

main cause of action"); *Pescatore v. School District of Philadelphia* (Pa. Cmwlth., No. 1072 C.D. 2014, filed February 27, 2015) (same).[4]

More recently, in *Brooks*, our Supreme Court examined the three-prong collateral order test in the context of the analogous sovereign immunity doctrine.[5] There, a courthouse visitor brought a personal injury action against the family court and others after she was allegedly injured while walking into an unmarked glass wall at the family court building. The family court moved for summary judgment asserting sovereign immunity, which the trial court denied. The family court appealed. This Court quashed the appeal. On further appeal, the Supreme Court reversed and remanded upon determining that the family court's motion for summary judgment on the defense of sovereign immunity was immediately appealable under the collateral order doctrine. *Brooks*, 259 A.3d at 374-75.

The Supreme Court agreed with our analysis regarding the first two prongs. *Brooks*, 259 A.3d at 371-72. First, the order was separable from the underlying negligence action because the issue of whether the family court was a "Commonwealth party" entitled to immunity could be resolved independent of a consideration of the negligence claim. *Id.* at 372. Second, the right involved -- sovereign immunity -- "implicates public policy concerns that extend beyond the parties to the instant litigation, as its resolution will dictate whether a member of the general public may maintain a negligence action against the courts." *Id.* at 364. The issue on appeal was whether the third prong was met. The Supreme Court

---

[4] Unreported memorandum opinions of this Court may be cited for their persuasive value pursuant to Rule 126(b)(1) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 126(b)(1), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

[5] *See* Sections 8521-8527 of the Judicial Code, commonly referred to as the Sovereign Immunity Act, 42 Pa. C.S. §§8521-27.

determined it was met, explaining that the immunity afforded to public official defendants should be immediately appealable because the immunity "is irreparably lost if appellate review of an adverse decision on [the] immunity is postponed until after final judgment." *Id.* at 373.

Based on the foregoing, there is no doubt that the importance and irreparable loss prongs are clearly met here. *See Brooks*. The crux of the matter is whether the separability prong is also met. In support of the separability prong, Haileab relies on *Durham*, for the position that an ADA is *always* entitled to official immunity.

In *Durham*, an inmate filed a tort action against his prosecutor alleging that the prosecutor violated various constitutional rights in the course of his prosecution. The prosecutor filed preliminary objections claiming immunity from suit for actions taken in his capacity as a prosecutor, which the trial court granted. On appeal, the Supreme Court affirmed, holding that the prosecutor was immune from suit for action taken in his official capacity under the doctrine of "absolute immunity." *Durham*, 772 A.2d at 70. The Supreme Court opined:

> The public interest requires that district attorneys be able to carry out their duties without being hampered by civil suits claiming damages for actions taken in their official capacities. The public would indeed suffer if the prosecution of criminals were impeded, as would be the case if district attorneys were not accorded absolute immunity.

*Id.*

However, *Durham* is readily distinguishable from the case here. In *Durham*, the inmate alleged, and there was no dispute that, the prosecutor made the statements *during the course of his official duties*. *See Durham*, 772 A.2d at 69. Such is not the case here. It is hotly contested whether Haileab made the statements

10

within the course of his official duties. Melchiorre produced evidence in support of his claims that Haileab made the comments outside the scope of his official duties. Although Melchiorre admits to having a conversation with Haileab in which he expressed his displeasure with the DA's Office, Melchiorre denies that he ever used the "C" word or that the conversation had anything to do with matters that the ADA was litigating. Original Record at 405, 421.[6] Melchiorre claims that Haileab's statements were fabricated and said for his personal gain to divert attention away from his lack of diligence and effectiveness in litigating criminal cases. *See id.* at 288, 306, 422. Melchiorre also contends that Haileab regretted making the comments and wanted to apologize to, or smooth things over with, Melchiorre. *See id.* at 1339; *see also id.* at 751-54, 1328-29. Melchiorre avers that Haileab did not just make the alleged defamatory statements to his supervisors at the DA's Office, but he repeated the statements to other persons outside of the DA's Office in casual contexts, including to friends while out drinking. *Id.* at 732-33.

Upon review, the question of whether immunity applies will require the factfinder to review the evidence and determine whether Haileab made the statements for a purpose closely related to his prosecutorial functions or for his own self-interest and gain. Consequently, the issue of whether Haileab is entitled to immunity cannot be resolved independent of a consideration of the tort claim. Under the circumstances here, the issue of immunity is not separable from and collateral to the main cause of action. *See Sylvan*.

---

[6] Because the Original Record was filed electronically and was not paginated, the page numbers referenced herein reflect electronic pagination.

For these reasons, we grant Melchiorre's Motion to Quash and quash Haileab's appeal.

 

 

_____
MICHAEL H. WOJCIK, Judge


Judge Dumas did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vincent N. Melchiorre         :
                              :
       v.             : No. 1186 C.D. 2021
                              :
Simon Haileab, Esquire,      :
                              :
             Appellant  :

# **O R D E R**

AND NOW, this 27th day of February, 2023, we GRANT Vincent N. Melchiorre's Motion to Quash and QUASH Simon Haileab's appeal from the October 20, 2021 order of the Philadelphia County Court of Common Pleas (trial court).

_____
MICHAEL H. WOJCIK, Judge