NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2068
_____

CRYSTAL HARRIS; KADEYJA DIXON-FOWLER,
Appellants

v.

DISTRICT ATTORNEY LARRY KRASNER; BRIAN KEAN, ASSISTANT
DISTRICT ATTORNEY; CITY OF PHILADELPHIA; PHILADELPHIA DISTRICT
ATTORNEY'S OFFICE

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-22-cv-00839)
District Judge: Honorable Joel H. Slomsky
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 3, 2024

Before: HARDIMAN, PORTER, and AMBRO, *Circuit Judges*.

(Filed: June 6, 2024)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge.*

Crystal Harris and Kadeyja Dixon-Fowler appeal an order of the District Court dismissing their civil action. We will affirm.

I

Harris, a 23-year veteran of the Philadelphia Police Department, learned in 2020 that the Philadelphia District Attorney's Office had disclosed Internal Affairs Division complaints against her to defendants in cases where she had testified as a witness.[1] The disclosures included a 2014 complaint in which a male relative accused Harris of abusing her authority. The relative made this complaint after Harris reported him for sexually abusing Dixon-Fowler, a minor relative of Harris. The Internal Affairs Division "determined [the complaint] was unfounded" and "agreed that any evidence of . . . alleged lying during an official investigation would be expunged" from Harris's disciplinary file. App. 40.

In 2021, after Harris and another officer arrested a motorist for driving under the influence, Assistant District Attorney Brian Kean wrote an email to Harris's supervisor "stating he was declining prosecution . . . because it was not clear which officer did what during the arrest" and because "Harris was Do Not Call." App. 37. "Do Not Call" refers to the District Attorney's "Do Not Call List," a roster of police officers whom the District Attorney would not call to testify in court because of Internal Affairs Division complaints

---

[1] At this stage in the proceedings, we take all well-pleaded facts in the operative complaint as true and make all reasonable inferences in Harris's and Dixon-Fowler's favor. *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017).

filed against them.

Harris and Dixon-Fowler sued District Attorney Larry Krasner and Assistant District Attorney Brian Kean (together, the Prosecutors) as well as the City of Philadelphia and its District Attorney's Office (together, the City). They sought damages and equitable relief for common law, statutory, and constitutional violations of state and federal law.

Harris claimed that Defendants violated her First Amendment right to testify and deprived her of overtime pay for court appearances without due process in violation of the Fourteenth Amendment. Harris and Dixon-Fowler also sought to enjoin the Prosecutors from disclosing "any . . . information . . . relating to either [Harris's] expunged [Internal Affairs Division] complaint . . . or [Dixon-Fowler's] sexual assault . . . in . . . any future criminal prosecution," claiming these disclosures harmed reputational interests protected by the Pennsylvania Constitution. App. 43. Finally, Plaintiffs argued that Defendants were liable for intentional infliction of emotional distress under Pennsylvania law because the disclosure of Dixon-Fowler's sexual assault and the designation of Harris as "Do Not Call" had caused "serious psychological and emotional harm." App. 45.

The District Court granted Defendants' motion to dismiss. It concluded that Plaintiffs had failed to allege a violation of a constitutional right and that the Prosecutors were immune from suit for all claims. *See Harris v. Krasner*, 2023 WL 3431233, at *7–

3

12 (E.D. Pa. May 12, 2023). Harris and Dixon-Fowler timely appealed.[2]

## II

## A

Harris claims the District Court erred when it held that the Prosecutors were entitled to absolute immunity on her First Amendment claim. The Prosecutors disclosed Harris's Internal Affairs Division file, including the complaint alleging abuse of authority in Dixon-Fowler's case, to comply with their obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* requires prosecutors to "inspect" an arresting officer's personnel file and "disclose impeachment material that is exculpatory to the defendant." *United States v. Dent*, 149 F.3d 180, 191 (3d Cir. 1998). The Supreme Court's decisions in *Imbler v. Pachtman*, 424 U.S. 409, 424–29 (1976), and *Van de Kamp v. Goldstein*, 555 U.S. 335, 345 (2009), suggest that prosecutors are afforded absolute immunity in fulfilling their *Brady* obligations. "[D]etermining what information" from Harris's Internal Affairs file to disclose "require[s] legal knowledge and the exercise of related discretion." *Van de Camp*, 555 U.S. at 344. It is thus "intimately associated with the judicial phase of the criminal process because it concern[s] the evidence presented at trial" and "'preparation for trial.'" *Id.* (quoting *Imbler*, 424 U.S. at 430–31 & 431 n.33) (cleaned up). So the Prosecutors' disclosure of Harris's Internal Affairs Division file is a

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's order granting a motion to dismiss. *See Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

4

"quasi-judicial" function protected by "absolute immunity from [§] 1983 suits." *Imbler*, 424 U.S. at 420.[3]

The same is true of the Prosecutors' decision not to call Harris as a witness. "[T]he duties of the prosecutor . . . involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom," including "*which witnesses to call*." *Mancini v. Lester*, 630 F.2d 990, 994 n.6 (3d Cir. 1980) (quoting *Imbler*, 424 U.S. at 431 n.33) (emphasis added). Like our sister courts, we conclude that prosecutors have absolute immunity from suits challenging their refusal to call a police officer as a witness or their decisions to prosecute certain cases. *See Savage v. Maryland*, 896 F.3d 260, 270 (4th Cir. 2018); *Roe v. City and County of San Francisco*, 109 F.3d 578, 583 (9th Cir. 1997).

Harris's First Amendment § 1983 claim against the City fares no better. "[F]or *Monell* liability to attach, there must still be a violation of the plaintiff's constitutional rights." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 n.13 (3d Cir. 2020) (cleaned up). Harris has no unqualified right to testify in any trial she pleases, nor to compel the District Attorney's Office "to prosecute . . . [her] cases." *Savage*, 896 F.3d at 271.

---

[3] Harris argues that her Internal Affairs Division file contains "false . . . claims brought by [a] convicted rapist" in retaliation "against Harris for reporting the rapes," "not [*Brady*] material." Harris Br. 11–12. We disagree with her characterization of the file. Harris's file contained a complaint alleging abuse of authority, and it was reasonable for the Prosecutors to conclude that *Brady* compelled the disclosure of this information. *See, e.g.*, *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013) (finding state prosecutors violated *Brady* by failing to disclose "[a]n internal investigation report" accusing an officer of "lying during the course of his official duties" and "abus[ing] his authority to get what he wants").

Indeed, "the prosecution has no duty to call *any* witness . . . if it believes . . . that [her] testimony is either *unreliable*, surplusage, or irrelevant." *United States ex rel. Drew v. Myers*, 327 F.2d 174, 179 n.16 (3d Cir. 1964) (emphases added). Because Harris has failed to allege any free speech violation, her First Amendment § 1983 claim fails.

B

Harris also argues the District Court erroneously dismissed her § 1983 Fourteenth Amendment claim. She contends that her placement on the Do Not Call list and inability to testify about her arrests resulted in the deprivation of her public employment without notice or a hearing. The District Court held that the Prosecutors had absolute immunity from this claim because "[t]he decision to include police officers on the Do Not Call List is 'directly connected with the conduct of a trial'" and "'require[s] legal knowledge and the exercise of related discretion.'" *Harris*, 2023 WL 3431233, at *9 (quoting *Van de Kamp*, 555 U.S. at 344). We agree. And even if absolute immunity did not apply, Harris has not shown that Defendants deprived her of a property or liberty interest protected by the Fourteenth Amendment. She asserts that the disclosure of her Internal Affairs Division file and her placement on the Do Not Call List resulted in a de facto "suspension" because she no longer performs all aspects of her job or receives overtime pay for testifying in court. Harris Br. 11. But a loss of overtime opportunities or preferred work assignments does not support a due process claim. *See, e.g.*, *O'Donnell v. City of Cleveland*, 838 F.3d 718, 730 (6th Cir. 2016); *Altman v. Hurst*, 734 F.2d 1240, 1243 (7th Cir. 1984).

6

The District Court concluded that the Prosecutors had absolute immunity, so it did not analyze Harris's argument that her placement on the Do Not Call List harmed her reputational interests. But "reputation alone, apart from some more tangible interests such as employment," does not implicate a "liberty or property interest by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 701 (1976) (cleaned up); *see also Clark v. Twp. of Falls*, 890 F.2d 611, 619–20 (3d Cir. 1989).

In sum, the Prosecutors' disclosure of Harris's Internal Affairs file and their decision to place her on the Do Not Call List did not deprive her of any interest protected by the federal Constitution, and Harris cannot sustain her § 1983 claim on reputational harm alone. So the District Court properly dismissed this claim as against all Defendants.[4]

C

Harris and Dixon-Fowler argue that the Prosecutors' disclosure of Harris's Internal Affairs Division file violated their "right to protect [their] reputation[s]" under the Pennsylvania Constitution. App. 43 (citing Pa. Const. art. I, §§ 1, 11). Citing *Fraternal Order of Police Lodge No. 5 by McNesby v. City of Philadelphia*, 267 A.3d 531, 535 (Pa. Commw. Ct. 2021), the District Court denied Plaintiffs' request to enjoin

---

[4] We decline to consider Harris's and Dixon-Fowler's argument that Defendants violated their Fourteenth Amendment due process rights by revealing "personal[,] private information about Harris and Dixon-Fowler to the public in court." Harris Br. 12. Plaintiffs did not make this argument in the District Court, so it is forfeited. *See Simko v. U.S. Steel Corp.*, 992 F.3d 198, 205 (3d Cir. 2021).

the District Attorney's Office from disclosing information relating to Harris's expunged complaint or Dixon-Fowler's sexual assault in any future criminal prosecutions. *See Harris*, 2023 WL 3431233, at *10. As the District Court emphasized, the Commonwealth Court denied the police union's request "to enjoin [District Attorney] Krasner from creating and maintaining an internal Do Not Call List, *or from disclosing potentially exculpatory or impeachment information to criminal defense counsel*." *FOP Lodge*, 267 A.3d at 544 (emphasis added).

Because Harris sought "the same relief" denied in *FOP Lodge*, the District Court rejected her request to "enjoin the District Attorney from fulfilling its obligations under *Brady* and *Giglio*." *Harris*, 2023 WL 3431233, at *10. The District Court did not err in this conclusion. "[N]otion[s] of comity" and "a proper respect for state functions" militate against enjoining the Prosecutors from complying with their *Brady* obligations. *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 132 (3d Cir. 2014) (cleaned up).

In response, Plaintiffs argue that the District Court misreads *FOP Lodge*. It is true that the Commonwealth Court afforded the *FOP Lodge* plaintiffs some relief, but it was not the same relief that Harris and Dixon-Fowler now seek. The Commonwealth Court denied the *FOP Lodge* plaintiffs' request to enjoin the District Attorney's disclosure of potentially exculpatory material. But it held that the City's failure to provide a mechanism for officers "to demonstrate why . . . they should not be on the [Do Not Call] List" "deprived them of their fundamental rights to reputation" "without due process" under the Pennsylvania Constitution. 267 A.3d at 538, 545.

8

And while the *FOP Lodge* court enjoined the City from keeping officers on the Do Not Call List without notice, a hearing, and a removal mechanism, Harris and Dixon-Fowler seek a broad injunction barring the Prosecutors from sharing Harris's complaint file in any future *Brady* disclosures—the very relief the *FOP Lodge* court denied. *Harris*, 2023 WL 3431233, at *10. So the District Court properly dismissed Plaintiffs' claim for injunctive relief under the Pennsylvania Constitution.[5]

D

Lastly, Harris and Dixon-Fowler argue the District Court erred in dismissing their common law tort claim for intentional infliction of emotional distress. We agree with the District Court that this claim is barred by high public official immunity and Pennsylvania's Political Subdivision Tort Claims Act (PSTCA).

As for the claim against the Prosecutors, "[t]here is no question that the doctrine of high official immunity applies . . . to claims for intentional infliction of emotional distress," *Feldman v. Hoffman*, 107 A.3d 821, 835 (Pa. Commw. Ct. 2014), or that it applies to district attorneys and assistant district attorneys, *see Durham v. McElynn*, 772 A.2d 68, 70 (Pa. 2001). And the Prosecutors' disclosure of Harris's Internal Affairs file and their decision not to call Harris as a witness are "actions taken in the course of the official[s'] duties or powers and within the scope of [their] authority." *Id.* at 69 (cleaned up).

---

[5] Nothing in our opinion prevents Harris from asserting in Pennsylvania courts that her placement on the Do No Call List without notice and a hearing violates her reputational interests and due process rights under the Pennsylvania Constitution.

As for the City, "it is well-settled that where a plaintiff has averred willful misconduct on the part of local agency employees, [the PSTCA] bars recovery from the local agency because liability may be imposed . . . only for negligent acts," not "willful misconduct." *Olick v. City of Easton*, 2019 WL 1500930, at *2 (Pa. Commw. Ct. Apr. 4, 2019) (cleaned up). And "the term 'willful misconduct' is synonymous with the term 'intentional tort.'" *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (cleaned up).

So the District Court did not err in dismissing the claims against the Prosecutors and the City for intentional infliction of emotional distress.

\* \* \*

For the reasons stated, we will affirm the District Court's order dismissing Harris and Dixon-Fowler's claims against the Prosecutors and the City.