IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeff Brown, David Maser,           :
For a Better Philadelphia 501(c)(4),  :
and For a Better Philadelphia PAC,   :
                        Appellants  :
                                 :
            v.                    :
                                 :
Philadelphia Board of Ethics,        :   No. 1382 C.D. 2024
and J. Shane Creamer, Jr.          :   Argued: February 3, 2026

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE STELLA M. TSAI, Judge

OPINION
BY JUDGE TSAI                   FILED: March 25, 2026

Jeff Brown, David Maser, For a Better Philadelphia 501(c)(4) (501(c)(4)), and For a Better Philadelphia PAC (PAC) (collectively, Plaintiffs) appeal from the order of the Court of Common Pleas of Philadelphia County (trial court), sustaining in part the preliminary objections of the Philadelphia Board of Ethics (Board) and J. Shane Creamer, Jr. (collectively, Defendants) and dismissing Plaintiffs' complaint. After review, we affirm.

## I. BACKGROUND

The facts as set forth in Plaintiffs' complaint and its attachments are as follows: Brown is a resident of Philadelphia and was a candidate in the May 16, 2023, Democratic primary election for Mayor of Philadelphia (Mayor). Complaint, ¶ 6, Reproduced Record (R.R.) 7a. The 501(c)(4) is a Pennsylvania non-profit corporation, and the PAC is a Philadelphia-based political action committee (collectively, For a Better Philadelphia). Id., ¶¶ 3-4, R.R. 7a. During the relevant period, Maser served as the chairperson and treasurer of the 501(c)(4) and the

chairperson of the PAC. *Id*., ¶ 5, R.R. 7a. Brown engaged in fundraising activities for For a Better Philadelphia prior to the official announcement of his Mayoral candidacy on November 16, 2022, but he ceased contact with For a Better Philadelphia after the announcement. *Id*., ¶¶ 21, 23, 25, R.R. 10a.

The Board consists of five members who are appointed by the Mayor and confirmed by Philadelphia City Council. *Id*., ¶ 8, R.R. 7a. Among the responsibilities of the Board are the enforcement of the campaign finance laws enacted by the City of Philadelphia (City). *Id*., ¶ 9, R.R. 7a. Creamer serves as the Executive Director of the Board. *Id*., ¶ 10, R.R. 8a.

In March 2023, the Board began investigating the 501(c)(4) and PAC for campaign finance law violations. *Id*., ¶ 54, R.R. 11a. Although the PAC voluntarily agreed to cease campaign expenditures, the Board commenced an action in the trial court against For a Better Philadelphia on April 10, 2023 (Enforcement Action). *Id*., ¶¶ 64-67, Exhibit B, R.R. 17a, 67a-81a. The Board alleged that For a Better Philadelphia violated the City's campaign finance laws and Board regulations prohibiting coordination with Brown's campaign. *Id*., Exhibit B, R.R. 69a-75a. In support, the Board cited Brown's solicitation of funds for the 501(c)(4) prior to the announcement of his candidacy, as well as communication between his campaign staff and the PAC after the announcement. *Id*., R.R. 71a-75a. The Board requested the following relief: (1) a judgment that For a Better Philadelphia violated the City's campaign finance law; (2) a $2,000 civil penalty for each violation; and (3) an injunction prohibiting further campaign expenditures and other activities in support of the campaign. *Id*., R.R. 75a-79a.

Brown finished in fifth place in the primary election in May 2023. Following the primary, the Board filed an amended complaint, in which it withdrew its request

for injunctive relief but otherwise sought the same relief as in its original complaint. *Id*., Exhibit D, R.R. 134a-152a. For a Better Philadelphia filed a preliminary objection in the nature of a demurrer to the amended complaint. *Id*., Exhibit E, R.R. 154a-171a.

On September 11, 2023, the trial court sustained the demurrer and dismissed the Enforcement Action. *Id*., Exhibit F, R.R. 193a-202a. The trial court reasoned that "a faithful reading of the Board's regulations" demonstrated that a political action committee was prohibited only from coordinating with a "campaign," but a campaign did not exist until a candidate filed nomination petitions or publicly announced his or her candidacy. *Id*., Exhibit F, at 1, 6-9, R.R. 193a, 198a-201a. With regard to Brown, the trial court determined that "[t]here was no 'Jeff Brown campaign' prior to November 16, 2022"—the date he publicly announced his candidacy—and, therefore, it was "impossible to conclude that the 'Jeff Brown campaign' could have coordinated with" For a Better Philadelphia before the public announcement. *Id*., Exhibit F, at 7, R.R. 199a. As the amended complaint solely alleged Brown's involvement in donations and solicitation of funds prior to November 16, 2022, the trial court ruled that the Board could not hold For a Better Philadelphia liable for violation of the City's campaign finance law or Board regulations. *Id*., Exhibit F, at 1, 7-10, R.R. 193a, 199a-202a. The Board initially appealed from the dismissal of the Enforcement Action but discontinued the appeal prior to an appellate ruling. *Id*., ¶¶ 50-51, R.R. 15a.

Plaintiffs filed the instant complaint on January 29, 2024. They allege that Defendants lacked any factual or legal basis to initiate the Enforcement Action because they knew Brown had cut ties with For a Better Philadelphia following the public announcement of his candidacy. *Id*., ¶¶ 27-32, 72-84, R.R. 11a-12, 18a-19a.

3

Plaintiffs aver that Defendants lacked good faith in prosecuting this action, acting with the intent to impugn Plaintiffs' reputations and to interfere with Brown's candidacy in collusion with other Mayoral campaigns. *Id.*, ¶¶ 33-34, 57-58, 60-62, 71, 85-86, 89-90, 98, 113, R.R. 17a, 20a, 22a, 24a. According to Plaintiffs, Creamer was personally motivated by animus towards them and his desire for media coverage. *Id.*, ¶¶ 35, 62, 71, 95, 99-100, R.R. 12a, 16a-18a, 22a. As evidence of Creamer's alleged bias and ulterior motives, Plaintiffs cite, *inter alia*: (1) an email from Creamer to a Philadelphia Inquirer reporter expressing his opposition to "dark money groups;" (2) his Inquirer editorial stating that he hoped the Enforcement Action "sends a message to Philadelphia candidates [that the city] has different rules [that] will be enforced;" and (3) a leaked email exchange with the PAC's lawyer in which Creamer ended settlement negotiations and stated he was "prepared to go to court to expose the most massive scheme to circumvent the city's contribution limits in 17 years." *Id.*, ¶¶ 91-94, Exhibits G, J, K, R.R. 20a-21a, 204a-213a, 225a, 227a-231a.

Plaintiffs plead four counts in their complaint. Counts I and II, brought on behalf of all Plaintiffs, seek monetary damages for wrongful use of civil proceedings and abuse of process.[1] In Counts III and IV, brought on behalf of Brown and Maser (collectively, Individual Plaintiffs), respectively, the complaint alleges that Defendants violated their right to reputation under Article I, Section 1 of the

---

[1] A plaintiff asserting a wrongful use of civil proceedings claim must prove that the defendant acted in a grossly negligent manner or without probable cause in pursuing the underlying litigation and the prior proceedings terminated in the plaintiff's favor. 42 Pa. C.S. § 8351(a). To establish a claim for abuse of process, the plaintiff must show that the defendant used a legal process against the plaintiff for a purpose other than for which it was designed. *Morley v. Farnese*, 178 A.3d 910, 919 (Pa. Cmwlth. 2018).

Pennsylvania Constitution.[2] With respect to the right to reputation claims, the complaint requests a declaration that Defendants violated Individual Plaintiffs' constitutional rights and a name-clearing hearing on their behalf.

Defendants filed preliminary objections, raising seven objections in the nature of a demurrer. As relevant here, Defendants argued that: (1) Counts I and II were barred against all Defendants on the basis of governmental immunity under what is commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act or Act);[3] (2) Creamer enjoyed absolute immunity from Counts I and II under the doctrine of high public official immunity; and (3) a name-clearing hearing, the remedy sought by Plaintiffs in Counts III and IV, is not a right to relief under the Pennsylvania Constitution.[4]

On October 8, 2024, the trial court entered an order, sustaining the objections in part and dismissing Plaintiffs' complaint with prejudice. Specifically, the trial court dismissed Counts I and II against the Board based on governmental immunity under the Tort Claims Act and against Creamer based on high public official immunity. The trial court dismissed Counts III and IV on the grounds that Pennsylvania law did not provide a remedy for a name-clearing hearing. The trial court overruled Defendants' remaining preliminary objections. This appeal followed.

---

[2] *See* Pa. Const. art. I, § 1 (providing that "[a]ll men . . . have certain inherent and indefeasible rights, among which are . . . possessing and protecting property and reputation").

[3] 42 Pa. C.S. §§ 8541-8564.

[4] Defendants additionally argued that: (1) Plaintiffs failed to plead facts sufficient to establish that Defendants lacked probable cause for the Enforcement Action; (2) Plaintiffs did not plead facts showing Defendants brought the Enforcement Action for an improper purpose; (3) Plaintiffs failed to plead any factual inaccuracies in the Enforcement Action; and (4) Individual Plaintiffs received due process for the alleged infringement of their right to reputation.

## II. ISSUES ON APPEAL

Plaintiffs raise three issues before this Court.[5]  First, they argue that the trial court erred by granting the Board governmental immunity under the Tort Claims Act, notwithstanding that the complaint alleged the Board's employees engaged in willful misconduct.  Second, Plaintiffs contend the Executive Director was not a high public official under our well-established case law, and, therefore, Creamer was not entitled to absolute immunity.  In the alternative, Plaintiffs request a remand for fact-finding regarding the nature of Creamer's duties and responsibilities.  Finally, Plaintiffs assert that the trial court should have afforded Individual Plaintiffs the opportunity to demonstrate that Defendants violated their reputational rights.  Plaintiffs contend that, contrary to the trial court's finding that a name-clearing hearing is unavailable in Pennsylvania, our case law supports the conclusion that such a hearing is the only adequate remedy to vindicate Individual Plaintiffs' reputational rights.  We address these three issues in turn.

## III. DISCUSSION

### A. Governmental Immunity

Section 8541 of the Act sets forth the general rule of governmental immunity for local agencies: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property

---

[5] When reviewing a ruling on preliminary objections in the nature of a demurrer, this Court's standard of review is *de novo*, and our scope of review is plenary. *Edgell v. City of Aliquippa*, 272 A.3d 1011, 1016 n.10 (Pa. Cmwlth. 2022).  In ruling on preliminary objections, a court must accept as true all well-pleaded factual allegations and inferences reasonably deducible therefrom. *Id.*  However, a court need not accept as true conclusions of law, unwarranted inferences of fact, argumentative allegations, or expressions of opinion. *In re FDR Park*, 344 A.3d 461, 468 n.7 (Pa. Cmwlth. 2025).  A demurrer will be sustained only when it is clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief. *Edgell*, 272 A.3d at 1016 n.10.

caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. § 8541. "Thus, governmental immunity is the rule, except where the Legislature has expressly provided otherwise." *N.N. v. Sch. Dist. of Philadelphia*, 349 A.3d 1081, 1088 (Pa. Cmwlth. 2025).

Under the Act, a local agency may be liable for damages that are "(1) recoverable under common law or a statute creating a cause of action; (2) caused by the negligent act of the local agency or its employees acting within the scope of their employment; and (3) caused by one of the specific acts enumerated in Section 8542(b)." *West on behalf of S.W. v. Pittsburgh Pub. Schs.*, 327 A.3d 340, 344 (Pa. Cmwlth. 2024) (*en banc*) (citation omitted). "Section 8542(b) enumerates nine such acts, each of which function as an exception to a local agency's broad grant of immunity." *Id.*; *see also* 42 Pa. C.S. § 8542(b).[6] Section 8542(a)(2) specifies that the "negligent acts" of subsection (b) "shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." 42 Pa. C.S. § 8542(a)(2).

Section 8545 of the Act, relating to official immunity, provides that a local agency employee is liable for damages caused by acts "which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by" the Act. 42 Pa. C.S. § 8545. "Essentially, this provision states the liability of local agency employees cannot exceed the liability of their employing agency." *Pettit v. Namie*, 931 A.2d 790, 798 (Pa.

---

[6] The nine exceptions to local agency liability are: vehicle liability; care, custody, or control of personal property; real property; trees, traffic controls, and street lighting; utility service facilities; streets; sidewalks; care, custody, or control of animals; and sexual abuse. 42 Pa. C.S. § 8542(b).

Cmwlth. 2007). However, Section 8550 of the Act abrogates the official immunity defense and protections provided to a local agency employee in certain cases:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa. C.S. § 8550.

The trial court determined that, as a municipal authority established by the Philadelphia Home Rule Charter, the Board is a local agency under the Tort Claims Act. Trial Court Opinion at 3. The trial court noted that none of the Section 8542(b) exceptions to governmental immunity apply to Plaintiffs' claims. *Id*. The trial court rejected Plaintiffs' claim that the Board was not immune pursuant to Section 8550 of the Act, because the complaint alleged acts of willful misconduct and actual malice. *Id*. at 4. The trial court concluded that Section 8550 only strips an **employee** of a local agency of official immunity where it is judicially determined she engages in willful misconduct or acts with actual malice, not the agency itself. *Id*.

Plaintiffs argue that the trial court misinterpreted Section 8550 of the Act, which by its "plain and unambiguous terms" waives immunity for both a local agency or its employee whenever the relevant injury was a product of the employee's willful misconduct or criminal, fraudulent, or malicious acts. Plaintiffs' Brief at 31. Plaintiffs assert that if the General Assembly had intended for Section 8550 to only waive immunity for local agency employees, the statute would not have indicated that it applies "[i]n any action against a local agency **or** employee thereof." 42 Pa.

8

C.S. § 8550 (emphasis added). According to Plaintiffs, a reading of Section 8550 as waiving immunity against local agencies for the willful misconduct of their employees is consistent with Section 8542 of the Act, which they argue only immunizes agencies for negligent acts but not "acts or conduct which constitute[] a crime, actual fraud, actual malice or willful misconduct." 42 Pa. C.S. § 8542(a)(2). Plaintiffs recognize, however, that "[s]ome panels of this Court have concluded that Section 8550 does not waive immunity for local agencies" but aver that "those cases are wrongly decided" and, therefore, "should not control the outcome here." Plaintiffs' Brief at 33 n.5.

In fact, numerous decisions of this Court have rejected the very argument Plaintiffs present here. In *Orange Stones Co. v. City of Reading*, 87 A.3d 1014 (Pa. Cmwlth. 2014), for example, the court of common pleas dismissed wrongful use of civil proceedings, abuse of process, and other claims against a local agency—the City of Reading—finding that governmental immunity of the Tort Claims Act barred the claims. *Id*. at 1021. We affirmed that ruling, explaining:

> It is well-settled that where a plaintiff has averred willful misconduct on the part of local agency employees, [S]ection 8542(a)(2) of the Tort Claims Act bars recovery from the local agency because liability may be imposed on a local agency only for negligent acts. *City of Philadelphia v. Glim,* 613 A.2d 613, 617 (Pa. Cmwlth. 1992); *City of Philadelphia v. Brown,* 618 A.2d 1236, 1238-39 (Pa. Cmwlth. 1992). In addition, [S]ection 8550 . . . does not create an exception to [S]ection 8542(a)(2), and, as a result, a local agency may not be held liable for the willful misconduct of its employees. *Glim,* 613 A.2d at 617; *Brown,* 618 A.2d at 1238-39. In order to overcome the defense of governmental immunity, a plaintiff's claims against a local agency must sound in negligence and must fall within one of the [nine] enumerated exceptions to local agency immunity set forth in [S]ection 8542(b) of the Tort Claims Act. *Glim,* 613 A.2d at 616-17.

9

*Id*. at 1022 (some internal citations omitted). We therefore concluded that "regardless of how [the plaintiff's] claims [were] characterized, as either sounding in intentional, willful misconduct or negligence, [they were] barred by governmental immunity." *Id*.; *see also West*, 327 A.3d at 343-44 (citing *Orange Stones* and stating that a local agency is immune to intentional tort claims based on the willful misconduct of its employees).

We are bound by our precedent, which conclusively resolves the issue Plaintiffs present on appeal. *See Gillingham v. Cnty. of Delaware*, 154 A.3d 875, 881 n.3 (Pa. Cmwlth. 2017) (noting that only an *en banc* panel of this Court may overrule our prior decisions); *see also* Commonwealth Court Internal Operating Procedure § 257, 210 Pa. Code § 69.257. Even so, we find Plaintiffs' arguments entirely unpersuasive. A plain reading of Sections 8541 and 8542 of the Act shows that the General Assembly only waived immunity for claims based on "the negligent acts of the local agency or an employee thereof" and not for intentional acts, such as willful misconduct. 42 Pa. C.S. § 8542(a)(2). Furthermore, Section 8550 of the Act explicitly limits its application to Sections 8545, 8546, 8548, and 8549 of the Act, which establish official immunity protections for local agency employees and do not pertain to immunity for the agency itself.[7] 42 Pa. C.S. § 8550; *see also Miller v. Emelson*, 520 A.2d 913, 915 (Pa. Cmwlth. 1987) (explaining that "Section 8550 only

---

[7] As noted above, Section 8545 of the Act provides that local agency employees acting within the scope of their duties are liable only to the same extent as their employer, subject to other provisions of the Act. 42 Pa. C.S. § 8545. Section 8546 of the Act permits employees to assert defenses of official immunity as well as common law defenses. 42 Pa. C.S. § 8546. Section 8548 of the Act provides that a local agency shall indemnify its employees for the payment of any judgment and generally prohibits any indemnification of the agency by the employee. 42 Pa. C.S. § 8548. Finally, Section 8549 of the Act provides damages against employees are recoverable only to the same extent as against a local agency under the Act. 42 Pa. C.S. § 8549.

waives four specific immunities for willful misconduct which pertain to local agency employees and does not affect the immunity of local agencies").

Accordingly, as there is no dispute that the Board is a local agency under the Tort Claims Act, we conclude that the trial court did not err in finding that the Board was entitled to governmental immunity under the Act and dismissing Counts I and II against the Board.[8]

## B. High Public Official Immunity

Plaintiffs next challenge the trial court's ruling that Creamer served as a high public official as Executive Director of the Board and thus enjoyed absolute immunity from Counts I and II of the complaint. "In Pennsylvania, high public official immunity is a long-standing category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority." *Doe v. Franklin Cnty.*, 174 A.3d 593, 603 (Pa. 2017). The purpose of the immunity "is to protect the high public official from liability, not for his or her own personal benefit, but for the benefit of the **public** he or she serves." *Winig v. Off. of Dist. Att'y of Philadelphia*, 347 A.3d 2, 11 (Pa. 2025) (citation omitted and emphasis in original). "Specifically, absolute immunity from civil liability for high public officials is the only legitimate means of removing any inhibition which might

---

[8] In their preliminary objections, Defendants claimed governmental immunity as to Counts I and II of the complaint, and they did not assert governmental immunity as to Counts III and IV. Similarly, Defendants argued only that Counts I and II were barred as to Creamer based on high public official immunity, not Counts III and IV. Therefore, we do not address whether either of the immunity doctrines applies to Plaintiffs' Article I, Section 1 claims. *Cf. Fraternal Ord. of Police Lodge No. 5 by McNesby v. City of Philadelphia.*, 267 A.3d 531, 546 (Pa. Cmwlth. 2021) (*en banc*) (holding that high public official immunity, like governmental immunity, only applies to claims for money damages and to compel affirmative conduct but not claims to restrain official action and concluding police officers could pursue due process and reputational right claims to enjoin district attorney from placing them on list of witnesses not to call at trial).

11

deprive the public of the best service of its officers and agencies." *Id*. (citation omitted).

When weighing whether an individual qualifies as a high public official, a court must consider "the nature of an official's duties, the importance of the office and particularly whether or not the official has policy-making functions." *Doe*, 174 A.3d at 603 n.10 (citation and brackets omitted). "[A]bsent statutory classification, the parameters establishing 'high public official' status would be delineated by the judiciary on a case-by-case basis, rather than establishing a bright-line" of demarcation. *Lindner v. Mollan*, 677 A.2d 1194, 1198 (Pa. 1996). The fact that an official lacks a policy-making function "is not the sole or overriding factor in determining the scope of immunity. Rather, it is the public interest in seeing that the official not be impeded in the performance of important duties that is pivotal." *Durham v. McElynn*, 772 A.2d 68, 70 (Pa. 2001); *see also Feldman v. Hoffman*, 107 A.3d 821, 827 (Pa. Cmwlth. 2014).

Pennsylvania courts have "ruled that a wide range of public officials with [varying degrees of] policy-making function" are high public officials, including mayor, township supervisor, deputy commissioner of public property of a city, city architect, Pennsylvania Attorney General, borough council president, county attorney, revenue commissioner of a city, parole superintendent, district attorney, and assistant district attorney. *See Lindner*, 677 A.2d at 1198-99 (collecting cases). Courts have also found that a state police captain, the executive director of an intermediate school unit, and borough council members are high public officials. *See Feldman*, 107 A.3d at 827 (collecting cases). Additionally, absolute immunity has been extended to a county coroner, *id*. at 828; county sheriff, *Doe*, 174 A.3d at 603 n.10; school board director, *Matta v. Burton*, 721 A.2d 1164, 1166 (Pa. Cmwlth.

12

1998); school superintendent, *Batgos v. Calloway* (Pa. Cmwlth., No. 1203 C.D. 2021, filed Mar. 15, 2024), 2024 WL 1131335, slip op. at 13-14; and school district human resources director, *Kipp v. Bellefonte Area School District* (Pa. Cmwlth., No. 263 C.D. 2023, filed Oct. 7, 2025), 2025 WL 2837404, slip op. at 35-37.[9]

Here, the trial court determined that each of the three factors—the nature of the official's duties, the importance of the office, and policy-making function— weighed in favor of a finding that high public official immunity applied to Creamer. The trial court noted that the Board's regulations entrusted substantial responsibility to the Executive Director conducting preliminary inquiries, investigations, administrative and judicial enforcement actions, and settlement negotiations. Trial Court Opinion at 6 (citing Phila. Bd. of Ethics Reg. No. 2[10]). The trial court found that the Executive Director position was of great importance as it ensured public trust in government by maintaining ethical standards and deterring campaign finance violations. *Id*. The trial court further observed that the Executive Director exercises policy-making functions, including deciding whether to initiate enforcement proceedings upon a finding of probable cause of a violation of an ethical standard or campaign finance law. *Id*. Finding that the alleged acts and omissions that form the basis of Plaintiffs' claims were within the scope of Creamer's duties, the trial court concluded that he had absolute immunity from Counts I and II. *Id*. at 6-7.

---

[9] Unreported panel decisions of this Court issued after January 15, 2008, may be cited as persuasive authority. *See* Commonwealth Court Internal Operating Procedure 414(a), 210 Pa. Code § 69.414(a).

[10] *See* https://www.phila.gov/media/20210606173629/BOE-regulation-2.pdf (last visited Mar. 24, 2026). "This Court may take judicial notice of public information on an official government website." *Cunningham v. Unemployment Comp. Bd. of Rev.*, 330 A.3d 20, 23 n.1 (Pa. Cmwlth. 2025).

Plaintiffs contend that the court should have permitted discovery and allowed Plaintiffs to present evidence demonstrating that Creamer was not a high public official. In the alternative, they argue that a review of the Philadelphia Code and Board regulations establishes that the Executive Director does not exercise the duties characteristic of other high public officials. Plaintiffs assert that the Executive Director's role in initiating investigations and administrative proceedings is overshadowed by the Board's sole authority to decide administrative actions and approve the filing of any court action. Plaintiffs contrast the Executive Director with the position of a district attorney—which our Supreme Court has held to be a high public official—arguing that Creamer lacks the independent decision-making and discretion characteristic of a prosecutorial position. Plaintiffs further argue that extension of absolute immunity would be contrary to the public interest in this case, considering the serious nature of Creamer's alleged conduct here involving his willful and malicious tampering with the political process.

Upon review, we see no basis to disturb the trial court's conclusion that Creamer is a high public official entitled to absolute immunity from suit for conduct within the course of his duties and scope of his authority. Initially, we discern no error in the trial court's grant of immunity to Creamer without permitting discovery or conducting an evidentiary hearing. Plaintiffs offer no support for their claim that a court must engage in fact-finding before determining that a party is a high public official. Indeed, numerous prior decisions regarding high public official immunity have been resolved at the preliminary objection stage. *See, e.g.*, *Durham*, 772 A.2d at 70 (affirming determination on preliminary objections that assistant district attorney was entitled to high public official immunity); *Feldman*, 107 A.3d at 836 (affirming preliminary objections ruling that county coroner was high public official

14

based upon review of coroner's duties as defined by law). Additionally, Plaintiffs do not dispute that the Board regulation cited by the trial court accurately sets forth the Executive Director's responsibilities. In fact, they cite the same regulation in their brief to minimize Creamer's role vis-à-vis the Board. *See* Plaintiffs' Brief at 39 (arguing that, pursuant to Phila. Bd. of Ethics Reg. No. 2 ¶ 2.25, the Executive Director's role is limited because only the Board can institute judicial enforcement proceedings).

Moreover, we reject Plaintiffs' invitation to consider the public interest as it pertains to their ability to vindicate the alleged harms perpetrated by Creamer against them in this case. While courts must determine high public official status on "a case-by-case basis," once a court extends the immunity to an official it "is **unlimited** and exempts a high public official from **all** civil suits for damages" based on statements or actions within the scope of the official's duties and authority. *Lindner*, 677 A.2d at 1195 (citation omitted and emphasis added); *see also Doe*, 174 A.3d at 604 (noting that high public official "immunity is an absolute privilege broadly applied to actions as well as speech" in all civil actions). Thus, the immunity applies even where the official's conduct was "motivated by malice" and regardless of whether "the innocent may sometimes suffer irreparable harm." *Lindner*, 677 A.2d at 1195-96 (citation omitted).

Turning to the Executive Director's duties and responsibilities, it is clear from our review that the position is a high-ranking one. The Board's regulations entrust the Executive Director with wide-ranging duties, including: (1) conducting preliminary inquiries; (2) reviewing and taking action on complaints; (3) initiating and terminating investigations; (4) referring matters to other government agencies; (5) issuing and enforcing administrative subpoenas; (6) administering oaths and

15

affirmations and taking testimony; (7) initiating administrative enforcement proceedings; (8) seeking authorization from the Board to initiate judicial enforcement proceedings; and (9) conducting settlement negotiations on the Board's behalf. *See* Phila. Bd. of Ethics Reg. No. 2 ¶¶ 2.3-2.6, 2.12, 2.23, 2.26-2.27. While, as Plaintiffs argue, the Board retains authority over matters such as resolving administrative proceedings and approving the filing of judicial actions, there is no requirement that an official must have plenary authority over every function of a government body to qualify as a high public official.

Furthermore, the importance of the Executive Director position is plainly evident. There is no doubt that the Board serves a vital interest in enforcing ethical rules pertaining to campaign finance, conflicts of interest, financial disclosures, standards of conduct, and prohibited political activities. Phila. Home Rule Charter § 4-1100. The Philadelphia Home Rule Charter specifically requires that the Board appoint an Executive Director to "exercise [the Board's] powers and fulfill its obligations." *Id*. § 3-3806(g); *cf. Doe*, 174 A.3d at 603 n.10 (explaining that a county sheriff, by virtue of its status "as a constitutionally created office," is a high public official). Additionally, pursuant to the rule of *Lyness v. State Board of Medicine*, 605 A.2d 1204 (Pa. 1992), which prohibits the intermingling of prosecutorial and adjudicatory roles in certain administrative entities, the Executive Director fulfills the essential role of overseeing "the 'investigatory' or 'prosecutorial' function" of the Board. *See* Phila. Bd. of Ethics Reg. No. 2 ¶ 2.2.[11]

---

[11] The regulation specifically provides:

As required by law, in the context of administrative enforcement proceedings and related investigations the Board shall maintain a separation between the adjudicative functions and the investigatory or prosecutorial functions. In this regard, the individual members of the Board, any Hearing Officer in a particular

16

Finally, we agree with the trial court that the Executive Director embodies policy-making functions by virtue of his authority to initiate investigations and enforcement proceedings. Deciding in which manner and against which parties to enforce the law is inherently a policy-making activity. In many respects, the Executive Director position is similar to that of a district attorney, which our Supreme Court has held to embody substantial policy-making responsibility. *See Durham*, 772 A.2d at 70 (finding assistant district attorneys are high public officials notwithstanding that they, "unlike their principal, the district attorney, are not known for policy-making functions").

Once a court determines that a defendant is a high public official, it must then ascertain whether the defendant's conduct that formed the basis of the suit was within the course of their duties and scope of their authority. *Lindner*, 677 A.2d at 1199; *Feldman*, 107 A.3d at 828. Here, there is no dispute that Plaintiffs' allegations related to conduct within Creamer's duties and authority as Executive Director. Therefore, the trial court did not err in holding that Creamer was absolutely immune from Counts I and II.

### C. Right to Reputation

In their final issue, Plaintiffs argue that the trial court erred by dismissing Counts III and IV of the complaint, in which Individual Plaintiffs alleged a violation of their right to reputation under Article I, Section 1 of the Pennsylvania Constitution. As noted above, the trial court determined that these claims were

---

case, and the General Counsel shall be considered to be part of the "adjudicative function," and the Executive Director and professional staff or consultants directed by the Executive Director shall be considered to be part of the "investigatory" or "prosecutorial" function.

Phila. Bd. of Ethics Reg. No. 2 ¶ 2.2.

"legally insufficient for lacking a remedy." Trial Court Opinion at 8. The trial court concluded that, while an administrative name-clearing hearing may be available under certain circumstances, "Pennsylvania law does not provide a name-clearing hearing remedy in the Court of Common Pleas for violations of" Article I, Section 1. *Id*. at 8 & n.3.

Our Supreme Court "has recognized that the right to reputation, although absent from the federal constitution, is a fundamental right under the Pennsylvania Constitution."[12]  *In re J.B.*, 107 A.3d 1, 16 (Pa. 2014).  The Pennsylvania Constitution "places reputational interests on the highest plane, that is, on the same level as those pertaining to life, liberty, and property." *In re Fortieth Statewide Investigating Grand Jury*, 190 A.3d 560, 573 (Pa. 2018) (citation omitted). Thus, the Pennsylvania Constitution "establish[es] a legally cognizable protection against government infringement of reputation without due process." *McNesby*, 267 A.3d at 546. The right to reputation "is a right to be protected regardless of allegation of

---

[12] Article I, Section 1 provides that the right to reputation is an inherent and indefeasible right:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. art. I, § 1. Additionally, Article 1, Section 11 provides for protection by "due course of law" from injury to an individual's reputation:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. art. I, § 11.

18

special or economic damage." *Moyer v. Phillips*, 341 A.2d 441, 443 (Pa. 1975); *see also D.C. v. Dep't of Hum. Servs.*, 150 A.3d 558, 566 (Pa. Cmwlth. 2016).

Our courts have imposed different remedies in response to Article I, Section 1 violations, including striking down as unconstitutional statutes that infringe individuals' reputations without adequate due process protection. *See, e.g.*, *Pennsylvania Bar Ass'n v. Com.*, 607 A.2d 850, 855-56, 859 (Pa. Cmwlth. 1992) (*en banc*) (holding statute authorizing compilation of list of attorneys based on suspicion of involvement in fraudulent insurance claims was unconstitutional because it damaged attorneys' reputations without prior notice and opportunity to be heard). In addition, this Court has determined that individuals may bring claims under Article I, Section 1 to require notice and an opportunity to be heard before the government publishes damaging information about them. *See McNesby*, 267 A.3d at 547-50, 553 (holding that police officers may pursue a claim that they are entitled to procedural due process rights to challenge a district attorney's decision to place the officers on a list of witnesses not to call based on alleged misconduct). Our Supreme Court has further held that "in circumstances where the government maintains records accessible to the public that are injurious to a person's reputation, and where no compelling basis exists for them to do so, the affected person has a right to expungement of those records." *T.G.A. v. Dep't of Educ.*, ___ A.3d ___ (Pa., No. 21 WAP 2023, filed Dec. 16, 2025), 2025 WL 3653628, slip op. at 53 (directing expungement of educators' disciplinary records reflecting suspensions upon the filing of felony criminal charges, where those charges were ultimately *nolle prossed* or the educators obtained an acquittal).

19

Here, however, Plaintiffs seek the novel remedy of a name-clearing hearing.[13] *See* Plaintiffs' Brief at 46 (acknowledging that, "[t]o date, no court in this Commonwealth has defined the contours of the right to a name-clearing hearing"). This Court previously addressed the availability of such a remedy in *Thomas v. Kane* (Pa. Cmwlth., No. 2236 C.D. 2015, filed Oct. 17, 2016), 2016 WL 6081868. In that case, Claude Thomas, a law enforcement officer working for the Office of the Attorney General, brought an Article I, Section 1 claim against Attorney General Kathleen G. Kane based on her alleged false statements to the press regarding Thomas' role in an investigation. *Id.*, slip op. at 2-5. Kane filed a preliminary objection to the reputational rights claim arguing that Thomas was not entitled to the remedy of a name-clearing hearing. *Id.*, slip op. at 6. The court of common pleas overruled that objection. *Id.*, slip op. at 6-7.

On appeal, this Court recognized that no Pennsylvania court has found that a name-clearing hearing is a proper remedy for an Article I, Section 1 violation, but federal courts have permitted name-clearing hearings for public employees when "the government's stigmatizing comments rise to the level of a due process violation." *Id.*, slip op. at 10. Ultimately, we did not reach the issue of whether a name-clearing hearing was an available remedy, as we concluded Thomas did not meet the initial burden of alleging a violation of his reputational rights:

> . . . Thomas focuses his argument solely on the issue of whether Article I, Section 1 of the Pennsylvania Constitution allows him to state a cause of action against Kane for a violation of his right to reputation. We do not dispute that under the proper facts an individual could make out an

---

[13] While Plaintiffs also sought a declaration that Defendants violated Individual Plaintiffs' constitutional rights, Plaintiffs have apparently abandoned any claim for declaratory relief as they focus their appellate arguments entirely on their entitlement to a name-clearing hearing and do not argue that the trial court erred by not affording them the opportunity to pursue a declaratory judgment.

independent cause of action for a violation of Article I, Section 1 of the Pennsylvania Constitution. Thomas, however, has not done so, because he has not alleged that he has been deprived of any due process rights in connection with the violation of his right to reputation under Article I, Section 1 of the Pennsylvania Constitution. Rather, Thomas simply alleged that Kane's defamatory statements have harmed his reputation and, therefore, if he can prove that Kane's statements were false, he would be entitled to a name-clearing hearing. If this Court were to accept Thomas' interpretation of the right to reputation under Article I, Section 1 of the Pennsylvania Constitution and conclude that Thomas would be entitled to a name-clearing hearing simply because Thomas believes that Kane's alleged false and defamatory statements harmed his reputation, we would be setting a precedent that any time a governmental actor made a statement that an individual believed harmed his reputation, that individual would be entitled to a name-clearing hearing under Article I, Section 1 of the Pennsylvania Constitution. This simply is not supported by the existing case law and is not an extension of the law that this Court is willing to make at this time.

*Id.*, slip op. at 10-11 (citation omitted).

Plaintiffs argue that the trial court erred by dismissing the Article I, Section 1 claims based on the absence of a remedy, where *Thomas* left open the possibility of a name-clearing hearing as a remedy upon the finding of an impairment of reputational rights. They assert that the complaint met the initial threshold under *Thomas* of pleading an Article I, Section 1 violation by alleging that: (1) Defendants falsely claimed in the Enforcement Action that Individual Plaintiffs engaged in unethical conduct, which damaged their reputations; and (2) Individual Plaintiffs were denied due process as they were not parties to, and therefore had no opportunity to be heard in, the Enforcement Action. Although there is no precedent for a name-clearing hearing in Pennsylvania, Plaintiffs assert that it is "the only mechanism that would allow [Individual Plaintiffs] to vindicate their rights." Plaintiffs' Brief at 47. Plaintiffs urge this Court to follow the lead of federal courts, which permit name-

21

clearing hearings as remedies for reputational harms to public employees, noting that the Pennsylvania Constitution provides even stronger protection for the right to reputation than its federal counterpart.

Like *Thomas*, we conclude that the complaint here does not allege viable right-to-reputation claims, and we therefore do not reach the question of whether a plaintiff may avail themselves of a name-clearing hearing remedy to redress reputational injury.[14]  First, the complaint does not allege an actionable harm to Individual Plaintiffs' reputations.  Plaintiffs do not contest the factual accuracy of the Board's allegations in the Enforcement Action, including that a company affiliated with Brown donated substantial funds to the 501(c)(4), Brown solicited additional donations for the 501(c)(4), and the PAC used those funds to support Brown's candidacy for Mayor.  We decline to conclude that the mere fact that the government alleged an individual was involved in an unlawful scheme where the government's theory is rejected in court, by itself, constitutes actionable reputational harm.  *Thomas*, slip op. at 10-11 (declaring that the Court was unwilling to allow a precedent "that any time a governmental actor made a statement that an individual believed harmed his reputation, that individual would be entitled to a name-clearing hearing").

Moreover, the complaint does not adequately plead a due process violation.  Indeed, a finding that Individual Plaintiffs were denied due process runs counter to the theory underlying their case that the trial court in the Enforcement Action fully considered the challenge to the legal basis for the Board's actions and definitively

---

[14] Although the trial court confined its reasoning to the lack of a name-clearing hearing remedy for a reputational rights claim, we may affirm the trial court's ruling for any reason supported by the record. *See In re A.J.R.-H.*, 188 A.3d 1157, 1175-76 (Pa. 2018).  We note that Defendants raised preliminary objections seeking dismissal on the basis that Plaintiffs failed to plead harm to their reputation and lack of due process.

ruled that no campaign finance violation occurred. While Individual Plaintiffs were not parties to and did not participate in the Enforcement Action, they did not seek to intervene, and For a Better Philadelphia adequately represented their interests. Indeed, the Board did not appeal from the dismissal of the Enforcement Action, and, therefore, Defendants would be estopped from relitigating the trial court's factual findings and legal conclusions in any future litigation. *See In re Stevenson*, 40 A.3d 1212, 1222 (Pa. 2012) (noting that a non-party may "use collateral estoppel offensively in a new suit against the party who lost on the decided issue in the initial case"). Therefore, in light of the trial court's dismissal of the Enforcement Action— which was the functional equivalent of an acquittal—allowing any further proceeding by Individual Plaintiffs to clear their names "would add little value at best." *Graham v. City of Philadelphia*, 402 F.3d 139, 146 (3d Cir. 2005) (holding police officer's acquittal of criminal charges—which formed the basis of his initial suspension from duty—constituted all the process due to the officer to "substantially vindicate[] his reputational interest" and obviated his need for a name-clearing hearing, which "would only subject [the officer] to further public scrutiny").

Accordingly, we conclude that Individual Plaintiffs' reputational rights claims fail as a matter of law as the complaint did not allege impairment of their reputational rights without adequate due process. *McNesby*, 267 A.3d at 546. We therefore find that the trial court did not err in dismissing Counts III and IV of the complaint.

## IV. CONCLUSION

For the reasons set forth above, we affirm the trial court's order sustaining in part Defendants' preliminary objections and dismissing Plaintiffs' complaint.


_____
STELLA M. TSAI, Judge

Judge Dumas did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeff Brown, David Maser,       :
For A Better Philadelphia 501(c)(4),  :
and For A Better Philadelphia PAC,  :
               Appellants  :
                        :
         v.            :
                        :
Philadelphia Board of Ethics,     :   No. 1382 C.D. 2024
and J. Shane Creamer, Jr.

# **O R D E R**


     AND NOW, this 25th day of March, 2026, the October 8, 2024 order of the Court of Common Pleas of Philadelphia County is hereby AFFIRMED.


                         _____

                         STELLA M. TSAI, Judge